■ In the Matter of CLEARVIEW GARDENS POOL CLUB, INC., Petitioner, v. MAX H. FOLEY et al., Constituting the Board of Standards and Appeals of the City of New York, Respondents, and WILLIAM GRODZINSKI et al., Intervenors-Respondents.— Proceeding under article 78 of the former Civil Practice Act, to annul a determination of the respondent board, dated May 23, 1963, which revoked a permit issued on August 22, 1962 to the petitioner by the Department of Buildings of the City of New York, and renewed by said department on May 6, 1963, for the construction, use and operation of a nonprofit swim club upon petitioner's real property in the Borough of Queens, City of New York. By order of the Supreme Court, Queens County, made August 20, 1963 pursuant to statute (Civ. Prac. Act, § 1296, now CPLR, § 7804, subd. [g]), the proceeding has been transferred to this court for disposition. Determination annulled, without costs, and respondent board directed to reinstate the permit. The subject property consists of about 70% of a large plot that has been designated as Lot 1 of a stated block on the city tax map. It has been referred to in the record as Tentative Lot 5, with the remaining 30% designated as Tentative Lot 1. The petitioner's rights with respect to the permit are governed by the Zoning Resolution of the City of New York which was in effect until December 15, 1961, since application for the permit was made prior to such date. Under that resolution Lot 1 was in a residence district; and in such a district, since prior to 1943, the use in question had been permissible as a conforming use (former Zoning Resolution, art. II, § 3, subd. 2). In 1943 the board granted a variance permitting Lot 1 to be used as a proprietary nursing home. A one-family frame dwelling house was and still is on the portion of the property which is Tentative Lot 1. In 1959 the board granted a further variance permitting Lot 1 to be used as "nursery school, day care agency and private non-profit country club" for 20 years. As an adjunct to the school the owner was permitted to and did install a swimming pool on the portion which is Tentative Lot 5. On September 15, 1961 a contract was entered into on behalf of the petitioner, which was later assigned to the petitioner, for the purchase of Lot 1, conditioned upon petitioner's obtaining a permit for the construction, use and operation of a nonprofit membership swim club. The petitioner applied for such permit for Tentative Lot 5. On December 8, 1961, the Queens Borough Superintendent of the Department of Buildings disapproved the application on the ground that the proposed use was contrary to the 1959 variance; he referred petitioner to the board. Later that month the Commissioner of Buildings refused to reconsider the matter and he also referred petitioner to the board. In February, 1962 a new Commissioner of Buildings was in office and he recommended reconsideration. The department then took into consideration the question of sewage, caused inspections to be made of the property, and conducted hearings on complaints against the application. The petitioner accepted certain conditions with respect to the operation of the premises and of the proposed club and procured and obtained permission from the Park Department of the city to use that department's outlets for drainage. The Department of Buildings, in August, 1962, then granted the permit; it was renewed in May, 1963. In the interim, in December, 1962, the intervenors Grodzinski, who own land

adjoining the subject property, applied to the Department of Buildings for revocation of the permit. That application was denied on December 18, 1962; and, on January 14, 1963, the intervenors filed an appeal to the respondent board. The board conducted a hearing on April 23, 1963; a committee of the board inspected the premises on May 9, 1963; and at a further hearing on May 14, 1963 the board rendered its decision revoking the permit. In the meantime, i.e., between the times of the granting of the permit and its revocation, the petitioner took title to all the land in Lot 1, entered into a building loan contract and into two contracts for construction, received money from its members, and incurred other liabilities. In addition, petitioner spent a substantial amount of money in the furtherance and promotion of the project. At the hearing in April, 1963, the petitioner's attorney stated that the frame building was not in use at all; that it was not going to be used; and that the petitioner had no plans as to any use to which it would be put. It was further established that three weeks earlier, the building had been partially damaged by fire. Among the findings of the board, as set forth in its return, are findings made by the board's inspection committee that, in addition to the main pool, the bathhouse and wading pool were substantially completed. An affidavit by one of the contractors states that his work was 80% completed and an affidavit by the other contractor states that on the day of the first hearing before the board that contractor's work was at least 90% complete. The answer of the intervenors Grodzinski admitted the allegation in the petition that the construction work was commenced in December, 1962. In our opinion, the prior variance grants could not and did not take from the owner of the property his statutory right to use the property for any purpose permitted by the applicable zoning resolution, including its use for the club purposes in question. The owner retained the right to revert at any time to a conforming use. Accordingly, petitioner was entitled to the permit for the club use; and, although this would apply if the permit was sought for Lot 1 as a whole, it nevertheless applies even as to the portion thereof which is Tentative Lot 5. In consequence, issuance of the permit was legal; and there is no basis in the record to justify its revocation. We are also of the opinion that the record establishes that the petitioner acquired a vested right in the permit, in that after its issuance the petitioner proceeded with the construction work in pursuance of the permit and incurred liabilities with respect to the work and materials involved in the construction; hence, the board had no right to revoke the permit (*City of Buffalo* v. *Chadeayne*, 134 N. Y. 163; *Rice* v. *Van Vranken*, 225 App. Div. 179; *Matter of Downey* v. *Incorporated Vil. of Ardsley*, 3 A D 2d 663). We do not pass on the question whether the application for and the issuance of the permit, and the action taken by the petitioner in pursuance of the permit, affected the otherwise applicable variance. Ughetta, Acting P. J., Kleinfeld, Christ, Hill and Rabin, JJ., concur.