*389 OPINION OF THE COURT
Jones, J.
“Tract of land” as used in the New York City Zoning Resolution refers to surface land only and does not include buildings erected thereon. Accordingly, even a very substantial space tenant is not a party in interest whose consent is required for an effective declaration of zoning lot restrictions and the attendant zoning lot merger under the resolution.
Plaintiff is a space tenant in the Macmillan Building, a 31-story building located at 866 Third Avenue in the Borough of Manhattan, New York City. Under its lease as amended[1] which, subject to the tenant’s exercise of options, runs until 2008, plaintiff occupies 100% of the usable area of the building above the first floor and 95% of the usable area of the building as a whole.
The Macmillan Building occupies the eastern third of the block bounded by Third Avenue on the east, 52nd Street on the south, Lexington Avenue on the west, and 53rd Street on the north. Adjoining the Macmillan Building to the west are two smaller buildings, an eight-story garage to the north (156 East 53rd Street) and a nine-story apartment building on the south (155-161 East 52nd Street). In the western half of the block, facing on Lexington Avenue, is the proposed development lot which is the genesis of the present litigation.
In July, 1981 Campeau Corporation (U.S.), Inc., purchased the Macmillan Building from The John Hancock Mutual Life Insurance Company, thereby succeeding Hancock as plaintiff’s landlord. On September 30, 1981, Campeau, CF Lex Corp. (a general partner of CF Lex Associates, the entity which held title to the development lot), and others, being the holders of separate fee titles to all the underlying land in the block, executed a declaration of zoning lot restrictions to effect a zoning lot merger with respect to the block pursuant to the provisions of the New York City Zoning Resolution as amended. On the same day CF Lex Corp. purchased from Campeau the “air rights” associated with the land on which the Macmillan Building *390 stands for $5,060,000. The objective of the zoning lot merger and the acquisition of these air rights was to enable CF Lex Corp. to erect a larger building on the development lot than could otherwise have been constructed.
In anticipation of these transactions, plaintiff instituted the present action in August, 1981 seeking a declaration that the transfer of air rights by a zoning lot merger of the properties in the block could not be effected without first obtaining the written consent thereto of plaintiff. The contention was that its consent was required because it was a “party in interest” under the zoning resolution.
Defendants moved under CPLR 3211 to dismiss the complaint for failure to state a cause of action, on the ground that plaintiff was not a “party in interest” within the contemplation of the zoning resolution. Supreme Court granted the motions and denied as academic applications by defendants for other relief and cross motions of plaintiff. The Appellate Division reversed the determinations of Supreme Court, reinstated the complaint, temporarily enjoined defendants from proceeding with construction pursuant to the zoning lot merger and the purchase of air rights, and remitted the case to Supreme Court for further proceedings. Defendants appealed to our court pursuant to leave granted by the Appellate Division.[2] We now reverse.
Under the New York City Zoning Resolution as amended in 1977, before a tract of land may be treated as a single zoning lot, a written declaration consenting to the zoning lot merger must be executed by each party in interest, unless such a party has waived its right with respect thereto. Once the separate parcels have been so “merged”, the maximum bulk of a building permissible under the zoning resolution is calculated on the basis of the merged zoning lot. Thus, by this means excess square footage associated with an existing building can be made available for use on an adjoining parcel. An “air rights” transfer can thus be effected, making permissible construction on the adjoining parcel of a larger building than would otherwise have been allowable under the resolution. By recourse to these procedures in the present case, defendants sought to *391 acquire air rights associated with the land on which the Macmillan Building stood to enable the construction on the development lot of a larger building than would otherwise have been permissible.
The controversy between the parties is whether plaintiff is a “party in interest” within the prescription of the zoning resolution — if so, the declaration without its participation is unavailing to effect the desired zoning lot merger; if not, the merger is effective and the transfer of the air rights will make possible the desired construction on the development lot. Section 12-10 (subd [d], par [iv] [“zoning lot”] of the zoning resolution provides: “A ‘party in interest’ in the portion of the tract of land covered by a Declaration shall include only (W) the fee owner or owners thereof, (X) the holder of any enforceable recorded interest in all or part thereof which would be superior to the Declaration and which could result in such holder obtaining possession of any portion of such tract of land, (Y) the holder of any enforceable recorded interest in all or part thereof which would be adversely affected by the Declaration, and (Z) the holder of any unrecorded interest in all or part thereof which would be superior to and adversely affected by the Declaration and which would be disclosed by a physical inspection of the portion of the tract of land covered by the Declaration.” Plaintiff asserts that it is a party in interest under one or both of clauses (X) and (Y). This, in turn, depends for present purposes on what is intended by the phrase, “tract of land”. If it refers only to the underlying surface land, plaintiff, having no cognizable interest in the land itself, is not a party in interest; on the other hand if it comprehends the buildings and improvements on the land, plaintiff is the holder of a substantial recorded interest therein and thus is a party in interest.
We conclude that the phrase “tract of land” refers only to the underlying surface land and does not embrace buildings on that land. After remarking that the phrase “tract of land” is not defined in the zoning resolution, we base our conclusion on several convergent considerations. In the first place, the denotation of the word “tract” is “a region or stretch (as of land) that is usu. indefinitely described or without precise boundaries”, or “a precisely defined or *392 definable area of land” (Webster’s Third New International Dictionary) and the word “land” means “the solid part of the surface of the earth in contrast to the water of oceans and seas” (id.). Neither alone nor in combination do these words in their lexigraphic sense connote buildings or improvements. Moreover it is significant that the draftsmen of the resolution chose not to use the familiar and readily available “land and improvements”. Second, as used elsewhere in the zoning resolution we find nothing to suggest that a broader connotation was intended to be attached to the phrase. The words “tract” and “lot” are used to refer to equivalent concepts (see, e.g., § 12-10, “zoning lot”, subds [b], [c]) and it would be a strained interpretation to include buildings and structures.
Finally, it would ill serve the achievement of the objective of the zoning resolution to hold that each party having an interest in a building on the land must join in execution of the declaration. Although it may be acknowledged that in the case before us plaintiff has a very substantial interest in the building, nothing in the phrase “tract of land” would permit a quantum differentiation. To require the consent of every space tenant with a recorded interest in the building, and thus to bestow on each such tenant a power of veto, would be so to encumber the procedure for zoning lot merger as to make it of questionable practical utility. Any such consequence would be inconsistent with the purposes of the zoning resolution, one of which is stated to be, “[t]o promote the most desirable use of land and direction of building development in accord with a well-considered plan, to promote stability of commercial development, to strengthen the economic base of the City” (§ 31-GO, subd [k]).
Moreover, air rights, at the heart of the concept of zoning lot merger, have historically been conceived as one of the bundle of rights associated with ownership of the land rather than with ownership of the structures erected on the land. Air rights are incident to the ownership of the surface property — the right of one who owns land to utilize the space above it. This right has been recognized as an inherent attribute of the ownership of land since the earliest times as reflected in the maxim, “[c]ujus est solum, ejus est *393 usque ad coelum et ad inferos” [“to whomsoever the soil belongs, he owns also to the sky and to the depths”] (Butler v Frontier Tel. Co., 186 NY 486, 491; 2 Blackstone’s Comm, p 18; see Ball, Vertical Extent of Ownership in Land, 76 U of Pa L Rev 631 in which the maxim is attributed to the early 14th century scholar Cino da Pistoia).[3]
For the reasons stated, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for entry of a declaratory judgment in accordance with this opinion.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order reversed, with costs, and case remitted to Supreme Court, New York County, for entry of a declaratory judgment in accordance with the opinion herein. Question certified answered in the negative.

. A memorandum of the original lease and subsequent amendments and modifications have been recorded in the office of the City Register.

. Plaintiff’s motion to dismiss the appeal for mootness was denied (56 NY2d 855).

. The assertion of plaintiff that air rights owe their origin to the New York City Zoning Resolution must be rejected. The zoning resolution provides sophisticated procedures to facilitate the functional transfer of air rights. In so doing it treats of property rights long antedating the enactment of the resolution.