873 **THIRD AVENUE CORP.**, Appellant-Respondent, v **KENVIC ASSOCIATES** et al., Respondents, and **CITY OF NEW YORK**, Appellant, et al., Defendants.

First Department, August 8, 1985

## APPEARANCES OF COUNSEL

*Philip H. Schaeffer* of counsel (*Lenard H. Mandel* and *David S. Klafter* with him on the brief; *Paskus, Gordon & Mandel,* attorneys), for Kenvic Associates and another, respondents.

*Jeffrey A. Jannuzzo* of counsel (*Richard S. Fries* with him on the brief; *Debevoise & Plimpton* and *Demov, Morris & Hammer-*

*ling,* attorneys), for John Hancock Mutual Life Insurance Company and another, respondents.

*Irving Genn* of counsel (*Leonard Koerner* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for City of New York, appellant.

*William R. Glendon* of counsel (*Frederick P. Glick, Guy C. Quinlan* and *Margaret Blair Soyster* with him on the brief; *Rogers & Wells,* attorneys), for appellant-respondent.

**OPINION OF THE COURT**

Bloom, J.

The controversy before us involves a claim, by Kenvic and 875 Third Associates (collectively Kenvic), on the one hand, and plaintiff on the other, to the same air rights. We are, in the main, in accord with the conclusions reached by Special Term. In one respect only do we differ. We are of the opinion that the motion of the city to dismiss should have been granted.

Kenvic is the fee owner of 13 contiguous tax lots fronting on the easterly side of Third Avenue between 52nd and 53rd Streets. It and its associates have owned the property since at least 1976. Plaintiff is the ground lessor of the corner tax lot at 53rd Street under a lease which commenced in 1959 and which, together with an extension, expires in 1993.

In 1980, application was filed by Kenvic for merger of the 13 tax lots into a single zoning lot, in accordance with the provisions of the Zoning Resolution. The application wended its way through the various necessary city agencies as required by the Uniform Land Use Review Procedure Act. Ultimately, it was given final approval by the Board of Estimate. During this period negotiations were conducted with the city for the erection of an office building, pursuant to which Kenvic agreed to provide for a connecting tunnel between the proposed building and the IND subway station located at 53rd Street and Third Avenue. It also agreed that when the ground lease now held by plaintiff expired, the building would be demolished and a new building would be erected which, at least in part, would be devoted to some public purpose.

The plans submitted by Kenvic provided for the erection of a 29-story building on the zoning lot created by the merger of the 13 tax lots owned by it in fee. These plans were approved by the city authorities. Under the Zoning Resolution, the allowable gross area of a building is computed on the basis of the square footage of the zoning lot augmented by a multiple fixed by the Resolution for the zoning area. In the instant case, this basis for

computation would have allowed for the erection of a 29-story office building on the area held in fee by Kenvic, i.e., the zoning lot. The plans approved called for such a building which was in fact erected. Had the 13 tax lots not been united into a single zoning lot, the maximum gross area of the proposed building would have been less. The cost of the building was some $87 million, financed by a temporary loan from Chase Manhattan Bank, N.A., and a permanent mortgage from John Hancock Mutual Life Insurance Company. The additional gross area for the building which was erected by Kenvic is accounted for by the air rights allocable to the lot under ground lease to plaintiff.

Initially, plaintiff sought a declaration that the merger of the tax lots into a single zoning lot was contrary to law and null, void, and of no effect whatsoever. It has now abandoned the claim for such declaratory relief and seeks damages only for the alleged usurpation by Kenvic of plaintiffs' alleged air rights. Special Term held that it was not entitled to such damages and granted summary judgment to Kenvic and its associate respondents. We agree. Since the damage claim has no application to the city, the city's motion to dismiss should also have been granted by Special Term.

Under Zoning Resolution § 12-10 as it existed from 1961 to 1977, a zoning lot was defined as either:

"(a) A lot of record existing on the effective date of this resolution or any applicable subsequent amendment thereto, or

"(b) A tract of land, either unsubdivided or consisting of two or more contiguous lots of record, located within a single *block,* which on the effective date of this resolution or any applicable subsequent amendment thereto, was in single ownership, or

"(c) A tract of land, located within a single *block,* which at the time of filing for a building permit (or, if no building permit is required, at the time of filing for a certificate of occupancy), is designated by its owner or developer as a tract all of which is to be used, *developed,* or built upon as a unit under single ownership." (Emphasis in original.)

The section further provided that a zoning lot need not coincide with a lot as shown upon the official tax map. It also provided that "ownership of a *zoning lot* shall be deemed to include a lease of not less than 50 years duration, with an option to renew such lease so as to provide a total lease of not less than 75 years duration."

Thus, the Zoning Resolution as enacted in 1961 was susceptible of the interpretation that air rights were possessed both by

the fee owner and the ground lessor. However, when the ground lease was for a total period of less than 75 years' duration the ground lessor could not transfer his air rights. Given these circumstances, it was inevitable that a clash would arise between the owner and the ground lessor over air rights. Such a clash did occur in *Newport Assoc. v Solow* (30 NY2d 263, *cert denied* 410 US 931). In that case the roles of the parties were reversed. The plaintiff was the fee owner. The defendant was a long-term ground lessor of property immediately adjacent to the property of the fee owner. The ground lessor also owned the fee to contiguous property. He decided to build on the property owned by him. In computing the maximum gross area of the proposed building he added the air rights of the property held by him as ground lessor. In resolving the clash, the Court of Appeals held that so long as no one had exercised the air rights, each was free to exercise them and to build to the maximum height allowed by law. Once, however, one of the contending parties utilized the air rights over the leased property, the other contending party was shorn of all such rights. In short, the laurel wreath went to the one first to exercise the right (*see,* concurring opn of Breitel, J., 30 NY2d, at pp 268-269).

In 1977 the Zoning Resolution was amended to eliminate the condition that a ground lessor was required to have an interest in the property of at least 75 years' duration in order to support the alienation of air rights. However, to avoid the possibility of vexing constitutional questions, the framers of the amendment "grandfathered" the rights of the parties. Inasmuch as both plaintiff and Kenvic held their interest in their respective properties prior to the amendment, they are both bound by the law as it then existed. Accordingly, *Solow* (*supra*) is applicable. Indeed, the case before us is stronger than *Solow,* for here the ground lease is for a period of less than 75 years. Hence, although plaintiff could use those rights during the period of its lease, it never had the power to transfer them.

Moreover, the 1977 amendment to Zoning Resolution § 12-10 defined zoning a lot as either: "(b) A tract of land, either unsubdivided or consisting of two or more contiguous lots of record, located within a single *block,* which, on the effective date of this resolution or any applicable subsequent amendment thereto, was in single ownership". Inasmuch as all 13 tax lots were at the time in single ownership, Kenvic was entitled to have all 13 tax lots designated a single zoning lot. Hence, the square footage of the zoning lot determined the allowable gross area of the building erected and there was no encroachment on plaintiff's air rights, either under the Zoning Resolution as it

existed in 1961 or the amendment of 1977 (*cf. Matter of Friends of Shawangunks v Knowlton,* 64 NY2d 387).

Finally, we note that the city fits into the picture only insofar as it may be called on to issue building permits for the land under ground lease, permitting the erection of structures by the ground lessor to a height to which it claims to be entitled to build. Initially, the ground lessor contended that building to such height was economically feasible and presented architectural plans indicating its intention to do so. At a conference called by Special Term that position was abandoned. In lieu thereof plaintiff urged its right to tear down the two walk-up tenements now on the lot and to erect a replacement building to the same height. When Special Term noted that nothing prevented the ground lessor from so doing, it abandoned that contention and retreated to a claim solely for damages. Such a claim, even if viable against Kenvic, and we have indicated that it is not, has no place against the city. By consequence, the city's motion to dismiss the complaint should have been granted.

Accordingly, the resettled order and judgment (one paper) of the Supreme Court, New York County (Martin Evans, J.), entered May 3, 1984, which granted the motion of defendants Kenvic Associates and 875 Third Associates, and the cross motions of Chase Manhattan Bank, N. A., John Hancock Mutual Life Insurance Company and Debevoise & Plimpton, all for summary judgment; denied the motion of defendant the City of New York to dismiss the complaint as against it and denied plaintiffs' cross motion for partial summary judgment, should be modified, on the law, to the extent of granting the motion of the city to dismiss and, except as so modified, affirmed, without costs. The appeal from the order of the Supreme Court, New York County (Martin Evans, J.), entered March 1, 1984, should be dismissed as subsumed.

Asch, J. (dissenting in part). I agree with the majority that the motion by defendant City of New York for an order dismissing the complaint against it should have been granted by Special Term. I also agree that summary judgment was properly granted to defendants Chase Manhattan Bank, N. A., John Hancock Mutual Life Insurance Company and Debevoise & Plimpton. However, I disagree with the result reached by the majority that notice and consent by the plaintiff ground lessee was not required before the defendant fee owner could incorporate the leased property into a single zoning lot and exploit the enlarged development rights attributable to the full tract. This conclusion is inconsistent with the intent of the drafters of

Zoning Resolution § 12-10 to require notice and agreement among interested parties before a multilot tract can be treated as a single zoning lot.

The majority opinion notes the history of the section and the fact that as it was first promulgated, the Court of Appeals reached the conclusion that the ground lessee (with a total term of not less than 75 years) or the fee owner, whichever acted first, had the right to use the development rights attributable to the lot in connection with the development of a neighboring lot (*Newport Assoc. v Solow,* 30 NY2d 263, *cert denied* 410 US 931).

Further problems under section 12-10 resulted from the fact that although the minimum length of term for a lease to qualify as "ownership" was specified, there was no statutory requirement that the lease itself, or a memorandum thereof, be recorded. There was, therefore, no certain way for prospective purchasers or others to determine from the public record whether development rights attributable to one lot had been used in constructing a building on an adjacent site.

In recognition of such problems associated with the original section 12-10, the definition of zoning lot was amended to its current form in 1977. The purpose of the amendment was described by this court in *Macmillan, Inc. v Cadillac Fairview Corp.* (86 AD2d 15, 19, *revd on other grounds sub nom. Macmillan, Inc. v Lex Assoc.,* 56 NY2d 386): "The limited legislative history suggests that the function of the amendment * * * was to facilitate air rights transfers in a manner which would not derogate from the rights of parties with certain defined substantial interests in the real property affected. The purpose was to involve and bind all such parties to the arrangement (City Planning Comm. Doc. No. N760226ZRY, July 13, 1977 Cal. No. 27, p 2, Amendment of the Zoning Resolution)." Thus, under this guiding principle that a zoning lot merger should not be effected without the knowledge and agreement of all interested parties, the drafters of the 1977 amendment devised a statutory scheme under which recognition and protection would be afforded to the holders of interests in the property and notice of prior zoning lots mergers would be a matter of public record for prospective purchasers and others interested in the property.

The draftsmen of section 12-10 created a separate subsection for each of a series of increasingly complex situations which might be involved in a zoning lot designation: subsection (a) deals with the simplest case, an existing single lot of record; subsection (b) deals with the still relatively simple situation of two or more lots which are to be merged into a single zoning lot,

all of the interests in which are owned by a single owner; subsection (c) deals with the more complex situation where two or more lots are held in single fee ownership, but as to which there are other parties with interests, such as ground leases, affecting *all or substantially all* of the tract; and, finally, subsection (d) deals with the most complex situation, where the lots to be included in the tract are under either single or multiple fee ownership, but there are entities holding lesser interests, such as ground leases, with respect to different portions of the tract, and such interests *do not extend to all or substantially all of the tract.* Under a proper reading of section 12-10, which gives meaning and effect to all of its subsections and which carries out the drafters' intent, the tract at issue cannot qualify as a single zoning lot under any of the provisions of section 12-10, except for subsection (d). It is a fundamental rule of statutory construction that all parts of a statute should be given effect and meaning and harmonized to achieve the legislative purpose (*Sanders v Winship,* 57 NY2d 391; McKinney's Cons Laws of NY, Book 1, Statutes § 98).

Special Term held that Kenvic was entitled to merge plaintiff's previously separate lot into a single zoning lot without the latter's knowledge or consent by virtue of subsection (b) of section 12-10 and former subsection (c), which has not been part of the Zoning Resolution since 1977. Subsection (b) was found to apply because the tract allegedly was, at all times, in "single ownership". In this connection, the court found that the phrase "single ownership" has exactly the same meaning as the phrase "single fee ownership" used in current subsection (c) and that both require only that the tract be held by individuals or entities having an undivided interest in the entire tract. Former subsection (c) was also held to be available to Kenvic, notwithstanding that it had already been repealed by the time Kenvic purportedly effected its zoning lot merger, because of a grandfather provision added to section 12-10 in 1977. The court, as does the majority herein, read the grandfather provision as carrying forward in perpetuity "all pre-existing rights" under section 12-10 as it stood before its amendment.

To reach these conclusions, the legislative history of the 1977 amendment was ignored and a statutory construction tolerated which makes subsections (b) and (c) redundant; distinguishes subsections (c) and (d) on a basis which is not only illogical but flatly inconsistent with the language of the resolution; and reads back into law a subsection which was expressly repealed.

Subsection (b) defines as a zoning lot: "A tract of land, either unsubdivided or consisting of two or more contiguous lots of record, located within a single *block,* which, on the effective date of this resolution or any applicable subsequent amendment thereto, was *in single ownership.*" (Emphasis added.) Thus, the tract cannot qualify as a zoning lot under subsection (b) because the tract was not "in single ownership," either at the time of the purported zoning lot merger or on August 18, 1977, the effective date of the 1977 amendment of the "zoning lot" definition.

To have "single ownership" within the meaning of subsection (b), there must be single ownership of *all* interests in the property. The tract here was thus not "in single ownership" because of the existence of multiple interests in the property, including plaintiff's ground lease.

Unlike the other subsections of section 12-10 dealing with tracts containing multiple lots, subsection (b) contains no procedures, such as a certification of parties in interest or a declaration of zoning lot merger, for taking into account the interests of other parties who have an interest in all or part of the tract. Such procedural safeguards are necessary unless all interests in the property are in the hands of one party, as is required under subsection (b). If the drafters of the 1977 amendment of section 12-10 had contemplated the application of subsection (b) when multiple interests in a tract exist, they would have written in procedural safeguards at the time of the amendment to ensure that the goals of notice and consent would be met before a zoning lot merger could be effected. Since no such safeguards were considered necessary, subsection (b) must be read as applying only where *all* interests in the tract are in single ownership.

The plain language of section 12-10 further supports this construction of subsection (b). The requirement in subsection (b) that the tract must be "in single ownership" stands in sharp contrast to the reference in subsection (c) to "under single *fee* ownership" (emphasis added). Subsection (c) may, if other required conditions are met, be available in circumstances where there is single ownership only of the fee, notwithstanding the presence of other interests in the property. Subsection (b), on the other hand, requires that the tract be "in single ownership," without any reference to the fee, and must be read as being applicable only where *all interests* in the lots involved are held singly. If the two phrases — "in single ownership" and "under single fee ownership" — are, despite their notable difference, treated as interchangeable, as Special Term's interpretation requires, then subsection (c) loses all independent meaning and

becomes redundant since any tract qualifying under subsection (c) would also necessarily qualify under subsection (b). The court's reading of section 12-10 thus renders subsection (c) meaningless.

Under the only logical interpretation of subsection (b), it plainly was not available to Kenvic as a means of creating a single zoning lot. As a ground lessee with the right to exploit the development rights attributable to its lot for the duration of the lease, plaintiff now has, and has had at all times since 1959 when the lease was made, a significant interest in the property. Thus, the tract was not "in single ownership" under subsection (b) at any conceivably relevant time, and subsection (b) was unavailable to Kenvic.

To qualify as a zoning lot under subsection (c), a tract must be "under single fee ownership" *and* each party having any interest in the tract must be a "party in interest" as that term is defined for purposes of subsection (c). For purposes of subsection (c), a "party in interest" includes only the following: "(W) the fee owner thereof, (X) the holder of any enforceable recorded interest superior to that of the fee owner and which could result in such holder obtaining possession of *all or substantially all of such tract of land,* (Y) the holder of any enforceable recorded interest in *all or substantially all of such tract of land* which would be adversely affected by the development thereof and (Z) the holder of any unrecorded interest in *all or substantially all of such tract of land* which would be superior to and adversely affected by the development thereof and which would be disclosed by a physical inspection of the tract of land." (Emphasis added.)

In light of the language and the purpose of section 12-10, subsection (c) must, therefore, be read as applying only when there is single fee ownership of the tract *and* each party having any interest in the property is a "party in interest" as that term is defined for purposes of subsection (c). That requirement is not met here, as Special Term apparently agreed since it found that subsection (c) did not apply. Although Kenvic may have had single fee ownership of the tract, every party having an interest in the tract was not a "party in interest" as defined for purposes of subsection (c). As the holder of an unexpired ground lease in a lot incorporated in the tract involved here, plaintiff unquestionably has an interest in the tract, and Kenvic conceded below that plaintiff was not a "party in interest" as that term is defined in subsection (c).

Subsection (d), which the court below also found unavailable to authorize Kenvic's actions here (presumably because of Kenvic's failure to obtain plaintiff's consent to the zoning lot merger), defines as a zoning lot: "A tract of land, either unsubdivided or consisting of two or more lots of record contiguous for a minimum of ten linear feet, located within a single block, which at the time of filing for a building permit (or, if no building permit is required, at the time of filing for a certificate of occupancy) is declared to be a tract of land to be treated as one zoning lot for the purpose of this resolution * * * Each Declaration shall be executed by each party in interest (as defined herein) in the portion of such tract of land covered by such Declaration (excepting any such party as shall have waived its right to execute such Declaration in a written instrument executed by such party in recordable form and recorded at or prior to the recording of the Declaration." Subsection (d) was intended to come into play in situations, such as the present one, in which none of the previous subsections of section 12-10 apply because there are entities holding less than fee interests in the property and such interests do not extend to all or substantially all of the tract. In such circumstances, in order for the full tract to qualify as a single zoning lot, a declaration of zoning lot merger must be executed by all "parties in interest" as that term is defined for purposes of subsection (d). As used in subsection (d), the term "party in interest" is far more broadly defined than in subsection (c) to include: "(W) the fee owner or owners thereof, (X) the holder of any enforceable recorded interest in *all or part thereof* which would be superior to the Declaration and which could result in such holder obtaining possession of any portion of such tract of land, (Y) the holder of any enforceable recorded interest in *all or part thereof* which would be adversely affected by the Declaration, and (Z) the holder of any unrecorded interest in all or part thereof which would be superior to and adversely affected by the Declaration and which would be disclosed by a physical inspection of the portion of the tract of land covered by the Declaration." (Emphasis added.) Plaintiff clearly is a "party in interest" under both parts (X) and (Y) of the quoted definition since it is a ground lessee of a portion of the tract under a recorded, enforceable lease which is superior to the declaration; it already has possession of a portion of the tract; and it is adversely affected by the treatment of the tract as one zoning lot inasmuch as such treatment caused the permanent loss of its development rights and substantially limited its rights to remodel and renovate during the balance of its lease. As a "party in interest", plaintiff's participation in a declaration under subsec-

tion (d) was required. Since plaintiff did not execute the requisite declaration with respect to the tract, the tract cannot qualify as a single zoning lot under subsection (d).

In addition to finding that Kenvic's tract was a single zoning lot under subsection (b), Special Term held that by virtue of a grandfather provision added to section 12-10 in 1977 (referred to by Special Term as subdivision [e]), the tract also qualifies as a zoning lot under the former subsection (c) which was repealed in 1977.

The grandfather provision, which was added to section 12-10 in 1977 when the amendment of section 12-10 eliminated the prior definition of "ownership" which had included long-term leases, states: "Where ownership of a zoning lot or portion thereof was effected prior to the effective date of this amendment, as evidenced by an attorney's affidavit, any development, enlargement or alteration on such zoning lot may be based upon such prior effected ownership as then defined in the zoning lot definition of Section 12-10. Such prior leasehold agreements shall be duly recorded prior to August 1, 1978." The sole purpose of the grandfather clause was to make clear that a 75-year lease which constituted "ownership" as previously defined in section 12-10 would continue to be recognized as "ownership" thereafter if the lease arrangement was already in effect and the lease was recorded within one year after the amendment. The grandfather clause was intended to grandfather a definition of "ownership," not to grandfather the right to effect a zoning lot merger in a manner which had already proved sufficiently unsatisfactory to require its appeal.

Regarding the grandfather provision, Norman Marcus, counsel to the City Planning Commission, wrote: "The new zoning-lot definition grandfathers assemblages completed prior to its effective date that are subsequently recorded within a year following its effective date. The city did not intend to force renegotiation of assemblages, including long-term development rights leases, which satisfied the old zoning-lot definition. The statute's objective of placing such assemblage long-term lease relationships on record, is achieved by requiring, as a condition of grandfather status, the recordation of such leases prior to August 1, 1978." (Marcus, *From the Legislatures*, 6 Real Estate LJ 336, 339 [1978].) The City Planning Commission memorandum clearly reflects the same purpose: "In order to protect the interests of all parties holding interest in a lot merger effected through leasehold arrangements prior to the effective date of this amendment, provision for recordation of their agreement

has been incorporated into the proposed text amendment." (City Planning Commn Amend of Zoning Resolution, July 13, 1977, Cal No. 27, at 3.)

The grandfather provision was not intended to have any application whatsoever to a situation such as this one where there is no claim to ownership by virtue of a long-term lease. This fact is made clear by the final sentence of the grandfather provision which reads, "Such prior *leasehold agreements* shall be duly recorded prior to August 1, 1978" (emphasis added). The sentence confirms that the grandfather provision was intended to deal exclusively with long-term leasehold situations. Thus, the grandfather provision has no relevance here and cannot reasonably be read to have given Kenvic the right to proceed under a subsection of section 12-10 which is no longer part of the Zoning Resolution.

Accordingly, the resettled order and judgment (one paper) of the Supreme Court, New York County (Martin Evans, J.), entered May 3, 1984, which granted the motion of defendants Kenvic Associates and 875 Third Associates and the cross motions of Chase Manhattan Bank, N. A., John Hancock Mutual Life Insurance Company and Debevoise & Plimpton, for summary judgment, denied the motion of defendant City of New York to dismiss the complaint as against it and denied plaintiff's cross motion for partial summary judgment should be modified to the extent of striking the declarative provisions of the decree; denying defendants' Kenvic Associates and 875 Third Associates motion for summary judgment, and granting plaintiff's cross motion for partial summary judgment by holding defendants Kenvic Associates and 875 Third Associates liable for failure to obtain plaintiff's consent, the matter remanded for further proceedings to determine damages, the City of New York's motion to dismiss the complaint as against it granted, and otherwise affirmed. The appeal from the order of the Supreme Court, New York County (Martin Evans, J.), entered March 1, 1984, should be dismissed as superseded.

KUPFERMAN, J. P., and ELLERIN, J., concur with BLOOM, J.; SULLIVAN and ASCH, JJ., dissent in part in an opinion by ASCH, J.

Resettled order and judgment (one paper) of the Supreme Court, New York County, entered on May 3, 1984, modified, on the law, to the extent of granting the motion of the city to dismiss and, except as so modified, affirmed, without costs and without disbursements. The appeal from the order and judgment (one paper) of said court, entered on March 1, 1984, is dismissed

as having been subsumed in the appeal from the resettled order and judgment (one paper) entered on May 3, 1984, without costs.