OPINION OF THE COURT
Herbert A. Posner, J.
This CPLR article 78 proceeding was commenced by a *580 developer (Bella Vista) to invalidate a resolution* filed on May 30, 1991 by the Board of Standards and Appeals (BSA). The resolution upheld an April 8, 1991 decision of the Department of Buildings of the City of New York (DOB) which refused to grant a permit to Bella Vista to construct a 14-story apartment house. The Buildings Department declared that Bella Vista must first obtain a modification of a preexisting variance on the lot adjacent to the one upon which the apartment house was to be built. Bella Vista (owner of tax lot No. 186) had paid over $1 million to purchase a portion of the air rights from the owner of the adjacent property (tax lot No. 185). Tax lot No. 185 had obtained a use variance (a few years earlier) to build a multiplex movie theatre in an R-4 (residential) zone;
New York City’s Zoning Resolution was enacted to establish control over use and bulk of all buildings or other structures or any land after December 15, 1961 (NY City Zoning Resolution § 11-111). In order to carry out this control, the city was divided into residential, commercial and manufacturing districts (NY City Zoning Resolution § 11-12). These three categories are divided into numerous subdivisions. The land in question here is in an R-4 zone. A movie theatre would be a nonconforming use. To build a nonconforming structure, a landowner must obtain a use variance from the BSA. The owner of lot No. 185 had obtained such a variance in 1983.
Bella Vista did not need any use variance on lot No. 186 to build a 14-story apartment house, since the area was already zoned for general residential use. However, the floor area ratio (FAR) of lot No. 186 was insufficient to accommodate a 14-story building and Bella Vista had to acquire 90,000 square feet of air rights from lot No. 185 to make up the bulk shortfall in order to satisfy the bulk requirements of New York City Zoning Resolution § 23-141. Technically, Bella Vista is merging the FAR of tax lot No. 186 with a portion of the FAR of tax lot No. 185 to create a new single zoning lot.
*581 Bella Vista claims that it is not changing the "use” of the newly created zoning lot; and, therefore, a building permit should be given to it, as-of-right. It further claims that DOB’s role is ministerial as to the merger of the two tax lots; and, therefore, DOB has abused its authority by not granting the permit. Furthermore, Bella Vista claims BSA has acted arbitrarily and illegally in requiring that a new use variance must be obtained for lot No. 185.
The respondents take the position that the zoning lot merger of lot No. 186 and 90,000 square feet of the air rights of lot No. 185 necessitate an application by the fee owner of lot No. 185 to have BSA modify the original use variance granted in 1983 (No. 370-82-BZ) pursuant to New York City Zoning Resolution § 72-20 (variances). The catch 22 is that the original fee owner of lot No. 185 has transferred the property to Yale University; and Yale does not want to "get involved.”
Pursuant to section 666 (7) (a) of the New York City Charter, the BSA is empowered to review determinations of the Commissioner of the Department of Buildings. In this article 78 proceeding to review the BSA determination, "the only question before the court is whether that decision is arbitrary, contrary to law or unsupported by substantial evidence * * * [a]nd the reviewing court will not substitute its judgment for that of the Board unless it is demonstrated that the Board acted arbitrarily or contrary to law”. (Matter of Paisley Dev. Corp. v Zoning Bd. of Appeals, 58 AD2d 705, 706 [3d Dept 1977]; Matter of First Natl. Bank v Sheehan, 30 AD2d 912 [3d Dept 1968]; Matter of Fuhst v Foley, 45 NY2d 441, 444 [1978].)
This court must determine from the whole record whether the decision of the BSA has any reasonable basis in fact and, if so, the decision must be affirmed. (Matter of Mandell v Purcell, 54 AD2d 935 [2d Dept 1976]; Corter v Zoning Bd. of Appeals, 46 AD2d 184, 186 [4th Dept 1974].) As the Court of Appeals in Matter of Cowan v Kern (41 NY2d 591, 599, rearg denied 42 NY2d 910 [1977]) stated: "Where there is a rational basis for the local decision, that decision should be sustained. It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them.” Furthermore, the burden is on petitioners to negate the presumption that the BSA acted lawfully and within its discretion. (Matter of Revorg Realty Co. v Walsh, 225 App Div 774 [2d Dept *582 1928].) "The courts may set aside a zoning board determination only where the record reveals illegality, arbitrariness or abuse of discretion * * * Phrased another way, the determination of the responsible officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence in the record.” (Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 314.)
The attorneys representing both sides to this controversy have done an excellent job of research. Unfortunately, there are no reported cases in this jurisdiction or other States that deal with a comparable fact pattern. Respondents rely on two unreported nisi prius cases, Bromberg v Board of Estimate (NY County, Mar. 12, 1986 [index No. 20856/85]) and 80-81 First Assocs. v Board of Stds. & Appeals (NY County, Apr. 1, 1991 [index No. 5262/90]). Both of these cases are similar to this one in that they involve developers who were seeking to enlarge the bulk of an existing building by the purchase of development rights (air rights) from an adjacent lot. However, in both cases, the lot on which the actual construction was to take place had a prior zoning lot variance. Therefore, in both cases, the court found there was a need for a new variance tracking the five findings required by New York City Zoning Resolution § 72-21.
The decision affirming DOB’s determination that Bella Vista’s proposal had to be referred to the BSA because the new zoning lot was created by a merger with a portion of lot No. 185, which was the subject of a prior use variance, is not rational and must be set aside by this court.
BSA is making an irrational juxtaposition of two unrelated factors in constructing a building — use and bulk. The latter refers to the height, width and other dimensions of a structure and the former refers to the manner in which the structure is to be used. If the owners of lot No. 185 wished to build an apartment house above the movie theatre, they could do so as-of-right, without any need for a new variance, provided the bulk is adequate under New York City Zoning Resolution § 23-141 and the building conforms to the R-4 zoning. Here, we have a developer who needs no use variance, because a 14-story apartment building is in conformance with the zoning requirements. What Bella Vista needed was either a bulk variance or the acquisition of additional FAR. Bella Vista, instead of going to BSA for a bulk variance, chose to purchase 90,000 square feet of FAR from the adjoining owner in order to have the required FAR. We have here what may be termed *583 a hybrid of the usual zoning lot merger in which a developer merges two entire lots. In this case, only the air rights of lot No. 185 are being merged with all of lot No. 186.
DOB’s and BSA’s ruling that the variance on lot No. 185 precludes the transfer of development rights, unless a new variance is obtained, creates a raison d'etre inimical to the entire common-law concept of "development rights.” Development rights are undoubtedly property rights which are a natural incident to land ownership (MacMillan, Inc. v CF Lex Assocs., 56 NY2d 386, 392-393 [1982]). As stated in MacMillan (supra, at 392-393): "[A]ir rights, at the heart of the concept of zoning lot merger, have historically been conceived as one of the bundle of rights associated with ownership of the land rather than with ownership of the structures erected on the land. Air rights are incident to the ownership of the surface property — the right of one who owns land to utilize the space above it. This right has been recognized as an inherent attribute of the ownership of land since the earliest times as reflected in the maxim, [cjujus est solum, ejus est usque ad coelum et ad inferos' ['to whomsoever the soil belong, he owns also to the sky and to the depths’]. (Butler v Frontier Tel. Co., 186 NY 486, 491; 2 Blackstone’s Comm, p 18; see Ball, Vertical Extent of Ownership in Land, 76 U of Pa L Rev 631 in which the maxim is attributed to the early 14th century scholar Ciño Da Pistoia).3” Footnote 3 to the above: "The assertion * * * that air rights owe their origin to the New York City Zoning Resolution must be rejected. The zoning resolution provides sophisticated procedures to facilitate the functional transfer of air rights. In so doing it treats of property rights long antedating the enactment of the resolution.”
The existence of a variance on tax lot No. 185 does not require the transferor of unused development rights to obtain a new variance, as long as the acquirer is going to use those rights in conformance with the zoning resolution. (See, Matter of Clearview Gardens Pool Club v Foley, 19 AD2d 905 [2d Dept 1963], affd 14 NY2d 809.) While Clearview does not involve a situation where development rights were purchased by an adjoining property owner, it does point out (by analogy) that a grant of a prior variance does not require a property owner to seek a new variance when it wishes to build a conforming use structure on a portion of the tax lot. The Appellate Division held: "In our opinion, the prior variance grants could not and did not take from the owner of the property his statutory *584 right to use the property for any purpose permitted by the applicable zoning resolution, including its use for the club purposes in question. The owner retained the right to revert at any time to a conforming use. Accordingly, petitioner was entitled to the permit for the club use”. (Supra, at 906.)
The petitioner’s request for an order requiring DOB to issue a building permit for a 14-story building is granted, provided the permit application meets the Building Code’s standards.

 Bella Vista did not come to the court for relief hastily. This proceeding is but the end result of a long and arduous bureaucratic maze that lasted for five years. Bella Vista’s original application for a building permit was made in 1986. At first, it was tentatively approved by counsel to the Buildings Department. Then new counsel disapproved it. Modifications to the application were made and correspondence between the parties seemed to be interminable. A period of five years elapsed before the Buildings Department finally referred the entire matter to the Board of Standards and Appeals. Can one ask why our great city is in economic decline?