OPINION OF THE COURT
 

 Bellacosa, J.
 

 Petitioner, Bella Vista Apartment Co., a real estate developer, planned to build a 14-floor apartment house on its residentially zoned Lot 186 in Queens. The lot fell short, however, of the requisite floor area ratio (FAR) and bulk zon
 
 *467
 
 ing specifications
 
 (see,
 
 NY City Zoning Resolution § 23-141). The owner of the adjoining Lot 185 had secured for itself a commercial use variance from New York City’s Board of Standards and Appeals (BSA) to build a movie theater. Thereafter, in 1986, Bella Vista purchased 120,000 feet of development rights, including 30,000 feet of air rights, from the owner of Lot 185, in an effort to satisfy the shortfall. Bella Vista allegedly paid $1 million for these assertedly surplus development rights.
 

 Without preliminary and discrete BSA review and approval, Bella Vista sought a building permit to erect the 14-story building, by piggy-backing Lot 185’s FAR onto its own to eliminate the Lot 186 deficiency. The New York City Building Department rejected the application, premised on this creative combination, as did the BSA on review of that determination. Supreme Court and the Appellate Division disagreed and granted Bella Vista’s CPLR article 78 petition, annulling the determination and directing issuance of the building permit. We granted leave to appeal and now reverse, dismiss the petition and hold that the excess residential use development rights enjoyed by property that specially benefits from a commercial use variance may not be transferred to and tacked onto an adjoining property even for an as-of-right use by that lot owner, without discrete BSA approval. Appellants are the Board of Standards and Appeals of the City of New York, the Commissioner of Buildings of the City of New York and the Department of Buildings of the City of New York (collectively the City).
 

 Central to this case is the fact that the owner of Lot 185, which was also zoned for residential use, had, in 1983, obtained a commercial use variance from the BSA to build a movie theater. The novel land use twist of this case, therefore, is that Bella Vista sought to consolidate a portion of the surplus development FAR of Lot 185, "varianced” into a commercial use, with its own Lot 186 FAR, for the purpose of complying with the requisite bulk floor space specifications. It would, thus, construct a residential building albeit otherwise consistent with that lot’s residential use.
 

 Using this theory, Bella Vista filed an application in 1986 with the Department of Buildings, pursuant to New York City Zoning Resolution § 12-10, requesting approval of the zoning lot FAR merger and a permit for the construction of the proposed 14-story apartment house. \The application was ultimately disapproved. In a letter dated November 7, 1990
 
 *468
 
 and updated April 8, 1991, the Buildings Department rejected the proposed plan. On May 29, 1991, the BSA confirmed the Building Department’s decision, stating:
 

 "[I]n order to build the proposed fourteen (14) story building, a transfer of development rights from the variance site, lot 185 to lot 186 is needed which requires a zoning lot merger that results in an entirely new zoning lot; and * * * the creation of this new zoning lot affects the basis of the Board’s variance grant since its actions were based on a zoning lot which will now be significantly changed because of the zoning lot merger.”
 

 Next, Bella Vista turned to the courts for relief. It sued the City seeking to (1) annul the BSA’s determination affirming the Building Department’s declaration requiring the petitioners to obtain pre-BSA approval to use Lot 186 for residential purposes by conjoining the additionally acquired FAR development rights from Lot 185; and (2) compel the Department to issue a building permit for the proposed construction project.
 

 In 1992, Supreme Court granted both prongs of Bella Vista’s requested relief, provided that the permit application otherwise conformed to the Building Code’s standards (154 Misc 2d 579). Supreme Court relied on
 
 Matter of Clearview Gardens Pool Club v Foley
 
 (19 AD2d 905 [2d Dept 1963],
 
 affd without opn
 
 14 NY2d 809) and stated that "[t]he existence of a variance on tax lot No. 185 does not require the transferor of unused development rights to obtain a new variance, as long as the acquirer is going to use those rights in conformance with the zoning resolution” (154 Misc 2d, at 583). The court added that the BSA irrationally juxtaposed "use and bulk” (id., at 582), reasoning that Bella Vista did not need a use variance, because the proposed apartment building was in conformance with the residential use requirements; all it needed was either a bulk variance or additional FAR and it had lawfully obtained the surplus FAR
 
 (id.).
 
 The court characterized the situation as "a hybrid of the usual zoning lot merger in which a developer merges two
 
 entire
 
 lots,” because "only the air rights of lot No. 185 [were] being merged with all of lot No. 186”
 
 (id.,
 
 at 583). The Appellate Division, in 1995, affirmed for the reasons stated by Supreme Court (222 AD2d 502) and later denied leave to appeal. We granted the City leave to appeal.
 

 The City argues that'the commercial use variance granted to Lot 185, by regulatory discretion based on landowner represen
 
 *469
 
 tations and BSA findings, precludes using a transferred portion of its development rights, without further review by the BSA. The City adds that shifting rights appurtenant to Lot 185 for residential purposes, when that lot had already been beneficially converted to an authorized commercial use by variance, would undermine the factors considered and the prerequisite findings made by the BSA in connection with the grant of the use variance.
 

 Pursuant to section 72-21 of the New York City Zoning Resolution, the BSA must make the following five findings before it may grant a variance:
 

 (a) That the lot has "unique physical conditions,” which create "practical difficulties or unnecessary hardship” when forced to comply strictly with the Zoning Resolution;
 

 (b) That the unique conditions of the subject property
 
 preclude any "reasonable possibility” of a "reasonable return,”
 
 and the variance is "therefore
 
 necessary to enable the owner to realize a reasonable return from such zoning lot;”
 

 (c) That the variance "will not alter the essential character of the neighborhood” or "substantially impair the appropriate use of development of adjacent property,” and that it "will not be detrimental to the public welfare;”
 

 (d) That the owner did not create the difficulties or hardship leading to the necessity for the variance; and
 

 (e) That the variance be
 
 "the minimum variance necessary to afford relief
 
 ’ (NY City Zoning Resolution § 72-21 [emphasis added]).
 

 Further expanding upon section 72-21 (b), the City points to this Court’s "well-established rule that a landowner who seeks a use variance must demonstrate factually,
 
 by dollars and cents proof,
 
 an inability to realize a reasonable return under existing permissible uses”
 
 (Matter of Village Bd. v Jarrold,
 
 53 NY2d 254, 256 [emphasis added]).
 

 It is undisputed that these findings were necessarily made at the time of, and as part of, the use variance grant for Lot 185, in 1983. The City correctly argues that if the owner of Lot 185 is permitted to retain the commercial use variance, and then
 
 *470
 
 also to sell off its as-of-right development rights under the original residential use authorization, the predicate findings by the BSA would be undermined as would the general over-all Zoning Resolution Plan. This is particularly so absent an updated review and ruling by the BSA to insure compliance with section 72-21, as Bella Vista and the adjoining owner would have it unprecedentedly applied to their arrangement. In other words, if a landowner retains the bonus option to sell surplus development rights as they existed before the use variance is acquired, the variance might not have been the "minimum variance necessary to afford relief,” and the lack of any "reasonable possibility” of a "reasonable return” is retrospectively placed in considerable doubt. This seems especially so in this case since the "residual development air rights” garnered a $1 million sale price in the marketplace.
 

 The City urges that the beneficiary of a variance, as well as the courts on judicial review of such matters, are bound by the explicit variance record and findings of the BSA. The City’s argument would, therefore, require a landowner benefitted by a variance to seek additional authorizing relief from the BSA before effectively transferring prevariance rights and benefits to adjoining owners. Otherwise, the premium, on top of its acquired variance, from its sale of development rights, contradicts the no-reasonable-return predicate finding, necessary to have garnered the use variance in the first place.
 

 Matter of Clearview Gardens Pool Club v Foley
 
 (19 AD2d 905,
 
 affd without opn
 
 14 NY2d 809,
 
 supra)
 
 is plainly and significantly distinguishable. There, the Appellate Division concluded that "the prior variance grants could not and did not take from the owner of the property his statutory right to use the property for any purpose permitted by the applicable zoning resolution” (19 AD2d, at 906). Rather, the Court stated, "[t]he owner retained the right to revert at any time to a conforming use”
 
 (id.,
 
 at 906).
 

 Although in
 
 Clearview
 
 the court determined that a use variance did not prohibit an owner from reverting entirely to a conforming use, the reversion there was simply that, not some compound hybrid. That situation is far from the artful combination attempted in the instant case. Bella Vista’s acquisition and piggy-backing of Lot 185’s FAR to satisfy its Lot 186 bulk building deficiency might undermine the basis for the use variance grant and offend proper land use regulation and application. The fatal defect of this merger theory is that once the use variance was granted, the owner of Lot 185 could
 
 *471
 
 only use the property in the manner authorized by the variance or revert completely back to its as-of-right use under
 
 Clearview.
 
 The precedent should not be expanded to allow landowners to garner commercial use by variance and then, by resourceful fusions, leverage assertedly residual residential development rights, without discrete BSA approval. The inherent contradictions and dangers to effective land use planning regulation and application dictate otherwise.
 

 The lower courts thus erred in concluding that additional BSA consideration and approval were not necessary in this kind of circumstance. The determinations of the BSA and the Buildings Department were rational and within their justifiable range of discretion
 
 (see, Conley v Town of Brookhaven Zoning Bd. of Appeals,
 
 40 NY2d 309, 314;
 
 see also, Matter of Cowan v Kern,
 
 41 NY2d 591, 598). Allowing the combination of a use variance with a spinoff of as-of-right surplus development rights between adjoining properties, so that a FAR deficient lot could then qualify even for a permitted use, might enable variance holders to manipulate and augment the generous benefit of their variances. The BSA must retain the power of review over these kinds of proposals to preserve coherent land use determinations and adherence to the zoning plan itself.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur; Judge Titone taking no part.
 

 Order reversed, etc.