*440
 
 OPINION OF THE COURT
 

 Levine, J.
 

 At issue here is the validity of a determination made by the New York City Board of Standards and Appeals (BSA) to grant use variances permitting development of two neighboring properties and issuing a Type I Negative Declaration rather than requiring an Environmental Impact Statement (EIS). The properties at issue in this matter are located on West Houston Street within and along the northernmost boundary of the SoHo Cast-Iron Historic District. In addition, these sites fall within an M1-5A zoning district, designated as a light manufacturing district.
 

 The BSA’s determination was made after proceedings spanning eight months, and included four days of public hearings and review of an abundance of documentary materials and exhibits. Additionally, the BSA had the benefit of an initial review conducted by the City Planning Commission (CPC). Moreover, because the sites were located within an historic district, the owners sought and ultimately obtained the necessary approval of the Landmarks Preservation Commission
 
 (see,
 
 Administrative Code of City of NY §§ 25-306, 25-307).
 

 In order to issue the variances here, the BSA was required to find that the proposed development met five specific requirements: that (a) because of “unique physical conditions” of the property, conforming uses would impose “practical difficulties or unnecessary hardship;” (b) also due to the unique physical conditions, conforming uses would not “enable the owner to realize a reasonable return” from the zoned property; (c) the proposed variances would “not alter the essential character of the neighborhood or district;” (d) the owner did not create the practical difficulties or unnecessary hardship; and (e) only the “minimum variance necessary to afford relief’ is sought (NY City Zoning Resolution § 72-21;
 
 see, Matter of Bella Vista Apt. Co. v Bennett,
 
 89 NY2d 465, 469).
 

 This Court’s review of the BSA’s determination to grant the variances sought is limited by the well-established principle that a municipal zoning board has wide discretion in considering applications for variances. A “board determination may not be set aside in the absence of illegality, arbitrariness or abuse of discretion,” and “will be sustained if it has a rational basis and is supported by substantial evidence”
 
 (Matter of Consolidated Edison Co. v Hoffman,
 
 43 NY2d 598, 608).
 

 As to the existence of unique physical conditions resulting in practical difficulties or unnecessary hardship, the BSA was
 
 *441
 
 entitled to rely on the study completed by the CPC. The CPC found that the “properties have idiosyncratic lot configurations that are generally not duplicated in other parts of the M1-5A district” in that the properties extended along a lengthy stretch of West Houston Street, a major thoroughfare, and were L-shaped, measuring only approximately 25 feet deep in places. In addition, the CPC study noted that “[t]he properties have been unable to be significantly improved since the widening of [West] Houston Street in 1963” which caused the irregular and unique shape of the lots.
 

 Likewise, the BSA could reasonably rely upon expert testimony submitted by the owners based upon significant documentation, including detailed economic analysis, which undeniably provided “dollars and cents” evidence
 
 (Matter of Village Bd. of Vil. of Fayetteville v Jarrold,
 
 53 NY2d 254, 256) that the unique physical configurations of the properties would preclude a reasonable rate of return from conforming uses. The owners’ expert demonstrated that a reasonable rate of return on the properties at issue would be 9.9%. Moreover, the submitted financial data and economic analysis also supported the conclusion that, not only would conforming uses fail to provide the 9.9% rate of return, but also no lesser non-conforming uses could yield that rate of return.
 

 Appellants do not seriously dispute that there was submitted the kind of detailed economic analysis necessary to provide “dollars and cents proof’ to support the BSA’s findings that conforming uses would yield an insufficient rate of return. Rather, their main objection is that, in part, the exposition of the owners’ expert was based upon comparable properties from outside the zoning district. In actuality, more than half of the properties examined were within the district, and virtually all of the remaining properties within the survey were located in areas adjoining the district. No inflexible rule exists .which requires, as a matter of law, that an economic analysis to support a use variance must be restricted exclusively to data on properties within a particular zoning district. Indeed, the New York City Zoning Ordinance’s requirement that any proposed development “not alter the essential character of the
 
 neighborhood or district”
 
 (§ 72-21 [c] [emphasis supplied]) demonstrably contemplates the possibility of consideration of properties that might fall outside the actual boundaries of the pertinent district. As the Appellate Division aptly observed, the value of the property — and thus the feasibility of potential uses — was due as much to its geographical location as to the zoning
 
 *442
 
 district of which it was a part. Under these circumstances it cannot be said that it was irrational or erroneous as a matter of law for the BSA to have considered comparables from outside the zoning district.
 

 Furthermore, appellants’ assertion that the current use of the properties as parking lots yielded a reasonable rate of return was raised for the first time on appeal and, thus, is not properly before us.
 

 As to the BSA’s finding that the proposed development plans would not change the essential character of the neighborhood, the agency could reasonably rely upon the changes to the plans of the development made to reflect the Landmarks Preservation Commission’s detailed construction requirements, which appellants do not challenge, that the two proposed buildings should have very different outward appearances and yet each would be designed in a manner consistent with the special architectural features of the SoHo district. Furthermore, it was not irrational for the BSA to conclude that the development— which would bring only an additional 185 residents to the already existent population of 10,000 residents in the neighborhood and immediately surrounding areas — would have only an insignificant effect on the general character of the mixed use neighborhood.
 

 For all of the foregoing reasons, it cannot be said that there was an absence of substantial evidence to support the Board’s findings as to each of the five requirements necessary to issue the proposed use variances here.
 

 Moreover, the BSA’s determination that no EIS was necessary was also neither irrational nor illegal. The BSA took a “hard look” at the potential environmental effects of the proposed development, and sought input from several interested agencies, including the City’s Department of Environmental Protection and the Landmarks Preservation Commission. The BSA also required archaeological studies and soil and groundwater testing. Thus, there was a rational basis for the BSA’s determination that there were “no foreseeable significant environmental impacts that would require the preparation of an Environmental Impact Statement.”
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.