■ In the Matter of RITA FORMAN, Appellant, v TRUSTEES OF STATE UNIVERSITY OF NEW YORK et al., Respondents, and ADF CONSTRUCTION CORP., Intervenor-Respondent. [757 NYS2d 180] —Appeal from an amended judgment (denominated amended order) of Supreme Court, Erie County (Notaro, J.), entered December 20, 2001, which dismissed the CPLR article 78 petition.

It is hereby ordered that the amended judgment so appealed from be and the same hereby is unanimously affirmed with costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to compel respondents to file an environmental impact statement (EIS) with respect to a 116-unit housing project for students at respondent State University of New York (SUNY) at Buffalo, known as the Skinnersville Village Townhouses, and petitioner sought a temporary restraining order enjoining construction of the housing project pending resolution of this proceeding. Supreme Court properly denied petitioner's motion for injunctive relief and dismissed the petition.

The court properly rejected petitioner's contention that the SUNY respondents improperly segmented the housing project at issue from other campus housing projects in order to avoid the necessity of preparing an EIS. The regulations for the Department of Environmental Conservation define segmentation for purposes of the State Environmental Quality Review Act ([SEQRA] ECL art 8) as "the division of the environmental review of an action such that various activities or stages are addressed under this Part as though they were independent, unrelated activities, needing individual determinations of significance" (6 NYCRR 617.2 [ag]). Segmentation is disfavored, based on two perceived dangers. "First is the danger that[,] in considering related actions separately, a decision involving review of an earlier action may be 'practically determinative' of a subsequent action * * *. The second danger occurs when a project that would have a significant effect on the environment is broken up into two or more component parts that, individually, would not have as significant an environmental impact as the entire project or, indeed, where one or more aspects of the project might fall below the threshold requiring any review" (*Matter of Concerned Citizens for Envt. v Zagata,* 243 AD2d 20,

22 [1998], *lv denied* 92 NY2d 808 [1998]). Thus, "a project developer is not permitted to exclude certain activities from the definition of a project for the purpose of making it appear that adverse environmental impacts have been minimized for the purpose of circumventing the detailed review called for under SEQRA" (*Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven*, 204 AD2d 548, 550-551 [1994], *lv dismissed in part and denied in part* 85 NY2d 854 [1995]). Here, the submissions of the SUNY respondents establish that the four other campus housing projects to which petitioner refers are not contiguous to each other or the housing project at issue. Moreover, the five projects were planned separately, have unique sources of funding, and are in no way interdependent. In response to those submissions, petitioner offered only campus newspaper articles, which have no evidentiary value. Where, as here, projects are independent of each other and are not part of an integrated or cumulative development plan, the projects may be reviewed separately and are not subject to a claim of improper segmentation (*see Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven*, 80 NY2d 500, 513-515 [1992]). Because their only common element is their general location, mandatory cumulative analysis of the four other campus housing projects with the housing project at issue herein is not required (*see id.* at 514-515).

Petitioner further contends that, in any event, even as a stand-alone project, the housing project at issue necessitated the preparation of an EIS. We reject that contention. When reviewing a SEQRA determination, a court is limited to considering "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *see Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292, 304 [2002]). In the case of a Type I action, "the lead agency must conduct an evaluation * * * and make a positive or negative declaration as to whether the proposed action will have a significant effect on the environment" (*Matter of Cathedral Church of St. John the Divine v Dormitory Auth. of State of N.Y.*, 224 AD2d 95, 99 [1996]; *see also* 6 NYCRR 617.4, 617.14). Prior to issuing a negative declaration, an agency must evaluate numerous criteria, take a hard look at relevant areas of environmental concern, and issue a written reasoned elaboration setting forth the basis for the determination (*see Cathedral Church of St. John the Divine*, 224 AD2d at 100). "[A]lthough an EIS is presumptively required for [T]ype I actions * * *, it is not a per se require-

ment" (*id.* at 100). Where the "record establishes * * * that the 'determination to issue a negative declaration and forego the need for an EIS was neither arbitrary and capricious nor irrational,'" that determination will not be disturbed (*Matter of Iroquois Cent. School Dist. v Zagata*, 241 AD2d 945, 945 [1997]).

In this case, the SUNY respondents prepared and submitted a full environmental assessment form (FEAF) and supported its FEAF with a Phase I environmental site assessment report. That report considered a number of potential environmental concerns, including the concerns that "portions of the property may constitute wetland areas" and that the property was being "maintained as a University of Buffalo Natural Regeneration Area." The report ultimately concluded, however, that "environmental risk associated with this property is low." The report reviewed various state and federal wetland maps and noted that "[t]here were no federal or state areas of wetlands identified on the subject property." Moreover, a Phase I cultural resources investigation was undertaken, which concluded that no significant cultural resources would be impacted by the project. Other studies undertaken in support of the project included studies of the ground water, air quality, traffic, solid waste, potential flooding, removal of vegetation, surrounding community, historical significance, and, in particular, the impact on wildlife and open space, which together appear to be petitioner's primary concern. We conclude that the SUNY respondents took the requisite hard look and thus, even assuming, arguendo, that this was a Type I action, we conclude that an EIS was not required. Present—Hurlbutt, J.P., Kehoe, Gorski, Lawton and Hayes, JJ.