■■■ In the Matter of ERIK DUNK, Appellant, v CITY OF WATERTOWN, Respondent. [784 NYS2d 753]—

Appeal from a judgment (denominated order) of the Supreme Court, Jefferson County (Hugh A. Gilbert, J.), entered April 15, 2004 in a proceeding pursuant to CPLR article 78. The judgment dismissed the petition.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding to annul respondent's determination relating to the proposed demolition of three buildings. Petitioner contends that Supreme Court should have determined that the City Council's issuance of a negative declaration pursuant to article 8 of the Environmental Conservation Law (State Environmental Quality Review Act [SEQRA]) was arbitrary and capricious because the proposed action was the total demolition of three buildings listed on the State and National Registers of Historic Places. We reject that contention.

In reviewing whether a determination was made in accordance with SEQRA and its implementing regulations, the court is "limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (*Matter*

*of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668, 688 [1996]). The court's role is not "to weigh the desirability of any proposed actions or choose among alternatives but only to insure that the agency has satisfied the substantive and procedural requirements of SEQRA and of the regulations implementing it" (*Matter of Village of Westbury v Department of Transp. of State of N.Y.,* 75 NY2d 62, 66 [1989]). The court should review the record to determine "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417 [1986]; *see Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337, 348 [2003]; *Gernatt Asphalt Prods.,* 87 NY2d at 688). An agency must prepare an environmental impact statement (EIS) if it determines that a proposed action "may have a significant effect on the environment" (ECL 8-0109 [2]; *see Westbury,* 75 NY2d at 68). The proposed project here was classified as a Type I action, which "carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS" (6 NYCRR 617.4 [a] [1]), but an EIS is not a per se requirement for a Type I action (*see Matter of Forman v Trustees of State Univ. of N.Y.,* 303 AD2d 1019, 1020-1021 [2003]). "Although the threshold triggering an EIS is relatively low, a 'negative declaration is properly issued when the agenc[y] ha[s] made a thorough investigation of the problems involved and reasonably exercised [its] discretion' " (*Matter of Spitzer v Farrell,* 100 NY2d 186, 190 [2003]).

Here, the City Council, as lead agency, completed a full environmental assessment form and made the requisite determination that the identified adverse environmental impacts would not be significant. The City Council thus issued a negative declaration, thereby obviating the need for an EIS (*see* 6 NYCRR 617.7 [a] [2]). Contrary to petitioner's contention, the City Council identified the relevant areas of environmental concern, took the requisite hard look at them, and in its negative declaration set forth a reasoned elaboration of the basis for its determination of no environmental significance (*see Spitzer,* 100 NY2d at 190-191; *Gernatt Asphalt Prods.,* 87 NY2d at 689-690; *Matter of Settco, LLC v New York State Urban Dev. Corp.,* 305 AD2d 1026, 1027 [2003], *lv denied* 100 NY2d 508 [2003]; *Matter of Golden Triangle Assoc. v Town Bd. of Town of Amherst,* 185 AD2d 617, 617-618 [1992]). The City Council determined that the demolition of the buildings did not have environmental significance because, although they were historic buildings, they were only a relatively small part of the Historic

District in the City. The City Council further elaborated that the buildings were unsafe and an "eyesore" and that there was little opportunity for rehabilitation. The record establishes that the City Council complied both procedurally and substantively with SEQRA. The City Council's determination to issue a negative declaration was neither arbitrary and capricious nor an abuse of discretion (*see Settco, LLC,* 305 AD2d at 1027-1028).

We reject petitioner's further contention that the demolition should be considered with the Streetscape Enhancement Project (Streetscape Project) for purposes of SEQRA review and that there was improper segmentation of environmental review in this case (*see id.* at 1026). Segmentation is "the division of the environmental review of an action such that various activities or stages are addressed under [part 617] as though they were independent, unrelated activities, needing individual determinations of significance" (6 NYCRR 617.2 [ag]). The proposed demolition and the Streetscape Project were not in any way related, other than with respect to their general locations. The Streetscape Project involved sidewalk, road, and utility improvements and had nothing to do with the buildings in the area. The projects were planned separately and are independent of each other (*see Settco, LLC,* 305 AD2d at 1027; *Forman,* 303 AD2d at 1020). Present—Green, J.P., Pine, Scudder, Martoche and Hayes, JJ.