■ In the Matter of JOHN FLECK et al., Appellants, v TOWN OF COLDEN et al., Respondents. [792 NYS2d 281]—

Appeal from a judgment (denominated order) of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered March 31, 2004 in a proceeding pursuant to CPLR article 78. The judgment dismissed the petition.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed on the law

without costs, the petition is granted and the matter is remitted to the Town Board of respondent Town of Colden for further proceedings in accordance with the following memorandum: Petitioners, residents of respondent Town of Colden, commenced this CPLR article 78 proceeding seeking to annul the determination granting the application of respondent James D. Hudson for site plan approval for a proposed deer farm. We conclude that Supreme Court should have granted the petition. We therefore reverse the judgment and grant the petition, and we remit the matter to the Town Board of respondent Town of Colden (Town Board) for further proceedings on Hudson's application in accordance with our decision herein.

While "a zoning board is vested with great discretion" (*Matter of Gomez v Zoning Bd. of Appeals of Town of Islip*, 293 AD2d 610, 610 [2002]), we conclude that the record before us lacks sufficient detail upon which to determine whether the site plan approval lacks a rational basis or was arbitrary and capricious (*see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]). The administrative record does not reflect the level of detail mandated by sections 108-113, 108-115 and 108-116 of the Town of Colden Zoning Code (Town Code). For example, the site maps submitted lack the official seal and signature of an architect, engineer or surveyor, they appear to have been hand-drawn without dimensional detail, and they fail to demonstrate that the proposed deer farm buildings will be the appropriate distance from the lot lines. Further, there is no indication in the record concerning the manner in which the Planning Board reached its determination approving the site plan application.

Moreover, in approving the site plan, the Town Board granted a variance for Hudson's 10-foot-high fences, to be located merely six inches from the lot lines. Town Code § 108-120 (A) provides that, where "extraordinary hardships may result from the strict compliance with [the Town Code] regulations, [the Town Board] may vary the regulations so that substantial justice may be done and the public interest secured, provided that no such variation shall be granted which will have the effect of nullifying the intent and the purpose of the Master Plan, the Zoning Code or any other law or ordinance of the Town of Colden." Based on the record before us, there was no showing of any "extraordinary hardships" to warrant a variance for a 10-foot-high fence located only six inches from the lot line. We further note that, because a request for a higher fence requires an area variance (*see Matter of Penfield Panorama Area Community v*

*Town of Penfield Planning Bd.*, 253 AD2d 342, 346 [1999]), the Town Board was obligated to comply with Town Law § 267-b (3) (b). Thus, in evaluating the request for an area variance pursuant to that section, the Town Board, acting in the place of the zoning board, was required to "engage in a balancing test, weighing 'the benefit to the applicant' against 'the detriment to the health, safety and welfare of the neighborhood or community' if the area variance is granted" (*Matter of Sasso v Osgood*, 86 NY2d 374, 384 [1995]). Here, there is no indication in the record before us that the Town Board gave notice to the adjoining property owners to enable them to be heard on Hudson's request for an area variance, nor is there any indication that the Town Board engaged in the required balancing test under Town Law § 267-b (3) (b).

We further agree with petitioners that the Town Board violated the requirements of article 8 of the Environmental Conservation Law (State Environmental Quality Review Act [SEQRA]). It is evident that the project will "involve[ ] the physical alteration of [at least] 10 acres" and, contrary to the interpretation of the Town Board, constitutes a Type I action for SEQRA purposes (6 NYCRR 617.4 [b] [6] [i]). Consequently, the Town Board, as lead agency, was required to make a determination of significance based upon its review of the nature of the proposed project, one that, as a Type I action, could have a significant effect on the environment (*see generally* ECL 8-0107, 8-0109 [2]; 8-0113 [3]; 6 NYCRR 617.1 [d]; 617.4 [a]; 617.6; *Matter of Kahn v Pasnik*, 90 NY2d 569, 573-574 [1997]). To support a determination that the agency properly complied with SEQRA, "the record must show that [the agency] identified the relevant areas of environmental concern, took a 'hard look' at them . . . and made a 'reasoned elaboration' of the basis for its determination" (*H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232 [1979]).

Because the proposed project is a Type I action, it is "more likely to require the preparation of an [Environmental Impact Statement (EIS)] than Unlisted actions" (6 NYCRR 617.4 [a]). As lead agency, the Town Board assumed "responsibility for determining whether an EIS was required" (*Matter of Citizens Against Retail Sprawl v Giza*, 280 AD2d 234, 236 [2001]). In addition, the Town Board was required to consider the long-range effects of the proposed project, including the assessment of the "significance of a likely consequence . . . in connection with . . . its duration; . . . its irreversibility; . . . its geographic scope; [and] its magnitude" (6 NYCRR 617.7 [c] [3] [iii]-[vi]; *see* 6 NYCRR617.7 [c] [2]). Because the Town Board failed to

identify the project as a Type I action, those factors were not adequately considered. Furthermore, the Short Environmental Assessment Form (EAF) for Unlisted actions was inadequate for this Type I action. While the EAF indicates that "[d]eer farming will blend into the [primarily] agricultural nature of the area," it provides no meaningful detail. Rather, it simply indicates in conclusory fashion that the project will have no adverse effects on air and water quality, existing traffic patterns, and solid waste production or disposal, that there "should be minimal aesthetic impacts," and that there are "no known significant or threatened species in this area." Given the limited information provided by the project sponsor, the Town Board lacked the benefit of an EIS and thus failed to take the requisite hard look and to set forth the requisite reasoned elaboration of the basis for its determination (see Kahn, 90 NY2d at 574).

We therefore reverse the judgment and grant the petition, thereby vacating the approval of the site plan application, and we remit the matter to the Town Board for further proceedings on Hudson's application in compliance with our decision herein. Present—Pigott, Jr., P.J., Hurlbutt, Gorski, Pine and Hayes, JJ.