In the Matter of PYRAMID COMPANY OF WATERTOWN et al., Appellants, v PLANNING BOARD OF TOWN OF WATERTOWN et al., Respondents. (Appeal No. 2.) [807 NYS2d 243]—

Appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered April 21, 2005 in a proceeding pursuant to CPLR article 78. The judgment dismissed the amended petition.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed on the law without costs and the amended petition is granted in part in accordance with the following memorandum: Petitioners commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination of respondent Planning Board of Town of Watertown (Board) insofar as the Board failed to comply with the State Environmental Quality Review Act ([SEQRA] ECL art

8) and granted the application of respondent COR Route 3 Company, LLC (COR) for "Site Plan Review" for the Towne Center Project (Project), a shopping center to be developed by COR on property owned by respondent Stark Family Partnership, LP. The shopping center to be developed is located within 300 feet of petitioners' existing shopping center. We agree with petitioners that Supreme Court erred in dismissing the amended petition, and we conclude that the court should have granted the amended petition in part by annulling the Board's determination.

We note at the outset that, contrary to the contention of COR, this appeal is not moot. The postargument submissions of the parties, submitted at the request of this Court, establish that petitioners have attempted to maintain the status quo at multiple junctures of this proceeding, including by way of applications to Supreme Court before and after issuance of the judgment on appeal and by way of motion to this Court pending appeal seeking, inter alia, an order "directing COR 'to cease and desist from all activities on the Project site' in order to preserve the status quo." We thus conclude on the record before us that this appeal has not been rendered moot (*see generally Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727, 728-729 [2004]; *Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach*, 98 NY2d 165, 172-173 [2002]), and we proceed to the merits of the appeal.

Upon our review of the record, we agree with petitioners that the Board failed to comply with SEQRA. We conclude that, in determining not to issue a positive declaration or to engage in scoping and in opting instead to rely upon COR's Draft Environmental Impact Statement (DEIS) to identify any environmentally significant impact resulting from the Project, the Board improperly abdicated its power and responsibilities under SEQRA (*see* 6 NYCRR 617.2 [u]; 617.6 [b] [3] [ii]; 617.12 [a] [2] [ii]; [b]; *see also Matter of Fleck v Town of Colden*, 16 AD3d 1052, 1054-1055 [2005]; *Matter of Forman v Trustees of State Univ. of N.Y.*, 303 AD2d 1019, 1020 [2003]). Because SEQRA requires strict adherence to its procedural requirements, the Board's failure to comply with those procedural requirements cannot be deemed harmless (*see Matter of King v Saratoga County Bd. of Supervisors*, 89 NY2d 341, 347-349 [1996]).

We further conclude that the Board failed to "identif[y] the relevant areas of environmental concern, [failed to take] a 'hard look' at them, and[failed to provide] a 'reasoned elaboration' of

the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]; *see Matter of Kahn v Pasnik*, 90 NY2d 569, 574 [1997]; *Fleck*, 16 AD3d at 1054).

With regard to wetlands, the Environmental Assessment Form (EAF) and DEIS acknowledged the presence of wetlands on the Project site but merely stated in conclusory fashion that the Project would not affect the wetlands. A wetlands report that had been commissioned by COR was not appended to the DEIS or otherwise incorporated therein. The record further establishes that, during the public comment period, concerns with respect to wetlands issues and the lack of documentation and data to support the position that the Project would pose no threats to wetlands were raised, yet those concerns were essentially ignored in the final environmental impact statement (FEIS) and the findings statement (*see Purchase Envtl. Protective Assn. v Strati*, 163 AD2d 596, 597-598 [1990]).

Similarly, although the New York State Department of Environmental Conservation (DEC) identified four threatened or endangered species of birds with "habitats on, or in, the vicinity of the site" and noted that on-site surveys may be required, the report of COR's wildlife consultant was not appended to or otherwise referred to in the DEIS, which generally lacked substantiating data. In addition, despite the fact that the FEIS cited a need for further analysis, the FEIS nevertheless concluded that there was no evidence that threatened or endangered species frequented the site or would be harmed by the Project. We further note that, although the findings statement contained a plan to provide species protection by grass mowing on part of the site, there otherwise were no field studies or expert reports to provide the requisite quantitative and scientific basis for the Board's approval.

Moreover, despite the fact that it was undisputed that the Project's water and sewer needs would overtax existing infrastructure, the Board nevertheless concluded that there would be no effect on public health and safety provided that a reserve water tank for firefighting purposes and a new sewer system were constructed. We note, however, that the plans to construct the reserve water tank and the new sewer system were preliminary in nature, and we further note that the "tentative" plan was to place the reserve water tank on petitioners' property. In our view, those tentative plans for mitigation measures concerning admittedly significant issues were wholly insufficient (*see Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd*, 79 NY2d 373, 384 [1992]; *Fleck*, 16 AD3d at 1054-1055).

Additionally, although the EAF and DEIS each concluded that the Project would not affect cultural, historic, or archeological resources or the character of the community, the DEC notified the Board that "databases . . . show an archeological [*sic*] significant area near the proposed project site." The FEIS failed to include supporting data to respond to concerns raised during the public comment phase with respect to cultural, historic or archeological resources and instead stated only that the Board would work with the State Historic Preservation Office to "determine the presence of any historic or cultural resources which may be impacted by the proposed project." The Findings Statement contains no references to cultural, historic, or archeological resources.

We therefore conclude that, in each of the areas of environmental impact addressed herein, the Board failed to take the necessary hard look at the environmental issues. "Similar agency efforts to ignore key, disputed issues have repeatedly been rejected in the past" (*Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 411 [1995]), and a mere "cursory examination" such as that performed herein is insufficient (*Matter of Desmond-Americana v Jorling*, 153 AD2d 4, 11 [1989]; *see Fleck*, 16 AD3d at 1054-1055; *Matter of Coalition for Future of Stony Brook Vil. v Reilly*, 299 AD2d 481, 484 [2002]). Because the "Site Plan Review" application is similarly defective, both procedurally and substantively, we conclude that the Board's determination was "arbitrary, capricious [and] unsupported by substantial evidence" (*Jackson*, 67 NY2d at 417).

We thus reverse the judgment and grant the amended petition in part by annulling the Board's determination (*see generally Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency*, 212 AD2d 958 [1995]).

We have reviewed petitioners' remaining contentions and conclude that they are lacking in merit. Present—Pigott, Jr., P.J., Hurlbutt, Scudder, Smith and Lawton, JJ.