■    In the Matter of HOMES FOR THE HOMELESS, INC., Respondent, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Appellants. [807 NYS2d 36]—

Order and judgment (one paper), Supreme Court, New York County (Faviola A. Soto, J.), entered July 14, 2004, which granted the petition brought pursuant to CPLR article 78 to annul a resolution of respondent Board of Standards and Appeals dated February 3, 2004, insofar as it denied petitioner's application for a zoning variance to permit construction of a new building, reversed, on the law, without costs, and the matter remitted to the Board of Standards and Appeals for further proceedings on petitioner's variance applications in accordance with this decision.

This appeal concerns the partial denial of a zoning variance for property located on the north side of Rockaway Boulevard, in Queens County. Petitioner Homes for the Homeless (HFH) has been operating transitional housing for families in need on a portion of the property. The site is across from Kennedy Airport, and is surrounded by businesses that support the airport, such as cargo/freight companies, and airline caterers.

The property is comprised of three formerly distinct tax lots, which are contiguous, all located in an M-1 (light manufacturing) zoning district. Hotels had been built on two of the lots (lot no. 1 and lot no. 11), and were sold to HFH in a foreclosure sale. According to the New York City Zoning Resolution, the hotels were designated Use Group 5, and as such were permitted in the M-1 district (*see* Zoning Resolution § 42-00). The third lot, no. 63, was apparently last used as a mechanics shop. The shop has since been abandoned. HFH's current use of the property, a philanthropic/nonprofit institution with sleeping accommodations, is designated as Use Group 3. Under Zoning Resolution § 42-00, Use Group 3 buildings, such as the Saratoga Inn, are not permitted in districts zoned for M-1, light manufacturing, purposes.

In addition to transitional housing, HFH also provides medical care, food, and life skills training (such as parental and child literacy, education and job skills) to families in need. The facility presently on tax lots 1 and 11 is called the Saratoga Interfaith Family Inn. It houses women and children, and residents stay at the Saratoga for periods ranging from a few months to a year. The Saratoga is essentially self-contained, and it is a considerable distance from any other residential area.

Upon receipt from the City of a Request for Proposals for new shelter contracts, HFH applied to the Board of Standards and Appeals (BSA) for a variance. This was necessary so that it could respond to the request for a new shelter proposal. The variance request had two components: (1) legalization of the existing use of the Saratoga Inn; and (2) permission to expand

the Saratoga by constructing a third building (partially on lot no. 11, and also on lot no. 63). A grant of the variance would allow petitioner to increase the size of its facilities. The proposal was unpopular and there was substantial objection from community residents, local politicians and community leaders.

The BSA held four days of hearings, after which it granted the legalization component of the application, but denied the expansion portion. As to the legalization, the Board found that under Zoning Resolution § 72-21 (a):

"WHEREAS, a small portion of Lot 63 is occupied by a nonconforming dwelling structure that was allegedly used most recently as a mechanics shop; . . .

"WHEREAS, as to the legalization component, the applicant states that the following are unique physical conditions, which create practical difficulties and unnecessary hardships in developing the site in conformity with underlying district regulations: the lot is irregular in shape, the existing hotel structure on Lot 11 is no longer viable for its intended use and thus is functionally obsolete; and"

"WHEREAS, the applicant also states that the existing structure on Lot 11 serves HFH's existing programmatic needs of providing transitional shelter services to families, and that HFH has an existing contract to provide such services; and"

"WHEREAS, only as to the legalization component, the Board finds that the aforementioned unique physical conditions, when considered in the aggregate and in conjunction with the programmatic needs of HFH, create practical difficulties and unnecessary hardships in developing the site in strict conformity with current zoning, and that the finding set forth as ZR § 72-21 (a) has therefore been met as to this component. . . ."

However, in denying the expansion component of the variance application, it found:

"WHEREAS, the Board while not denying the existence of the serious problem of homelessness in the City, finds that the applicant has not submitted substantial evidence that the unique physical conditions present at the subject site lead to unnecessary hardship or practically [sic] difficulties requiring an expansion of the proposed use and provision of increased shelter and services at the site through construction of a new building, nor has the claim of increased programmatic needs been substantiated, and thus, as to the expansion component, the Board finds that the applicant has failed to provide substantial evidence in support of the finding set forth at ZR § 72-21 (a) . . . ."

HFH then brought an article 78 proceeding challenging BSA's determination. The IAS court found that the BSA had ignored the required considerations of Zoning Resolution § 72-21 (a) and (e), and "based its decision on matters beyond its jurisdiction." With respect to section 72-21 (a), the court held that in finding that the entire property, including tax lot 63, was unique, it was arbitrary for the BSA to have prohibited HFH's application to expand the Saratoga onto that unoccupied land. The court also found that under section 72-21 (e) the variances sought were the "minimum relief necessary to enable HFH to house an additional 91 families." Because the BSA's order is inconsistent in its explanation of why the legalization, but not the expansion component of the variance applications was granted, we reverse and remand for reconsideration of the application by BSA.

Section 72-21 of the New York City Zoning Resolution governs applications for variances, and as relevant, it provides: "Where it is alleged that there are practical difficulties or unnecessary hardship, the [BSA] may grant a variance in the application of the provisions of this Resolution in the specific case, provided that as a condition to the grant of every such variance, the [BSA] shall make each and every one of [five] findings." Only two of those findings are relevant here. They are: "(a) because of 'unique physical conditions' of the property, conforming uses would create 'practical difficulties or unnecessary hardship;' . . . [and] (e) [that the variance sought be] 'the minimum . . . necessary to afford relief.' " (*See Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals*, 95 NY2d 437, 440 [2000] [summarizing the provisions of Zoning Resolution § 72-21 (a)-(e)].)

In this case, the BSA first found that the entire property sought to be utilized by HFH had "unique physical conditions," which created "practical difficulties or unnecessary hardship" precluding development in conformity with current zoning. However, in finding the property unique, and the present zoning impracticable, the BSA made no distinction between the property presently housing the Saratoga Inn, and the unoccupied lot no. 63, part of which was to be used for the proposed expansion. The BSA nonetheless bifurcated the land in its determination to approve only the legalization component of the application. The BSA's determination has also left HFH with a parcel of vacant property which it is unable to utilize (*cf. Matter of Ifrah v Utschig*, 98 NY2d 304, 309 [2002] [despite denial of variance petitioner was still able to make productive use of his property]).

It is settled that zoning boards have broad discretion in

considering applications for variances, and that judicial review is limited to determining whether the action taken by the board was illegal, arbitrary or an abuse of discretion (*id.* at 308). Further, a zoning board's determinations should be sustained if they have a rational basis and are supported by substantial evidence (*id.*). However, courts have repeatedly cautioned that "the board may not base its decision on generalized community objections" (*id.*; *see also Matter of Robert Lee Realty Co. v Village of Spring Val.*, 61 NY2d 892 [1984]; *Matter of Bower Assoc. v Planning Bd. of Town of Pleasant Val.*, 289 AD2d 575 [2001], *lv denied* 98 NY2d 604 [2002]; *Matter of Church of Jesus Christ of Latter-Day Sts. v Planning Bd. of Town of Clifton Park*, 260 AD2d 769 [1999]).

Here, the BSA, in the factual portion of its order, did not make any distinctions between the lots in determining that the unique nature of the property makes its present designated use impracticable. In addition, under the present zoning provisions, HFH cannot make any use of lot no. 63. The order provides no basis for review of the rationality of the distinction the BSA has drawn between the legalization and expansion portions of the application under section 72-21 (a) (*Matter of Zwitzer v Zoning Bd. of Appeals of Town of Canandaigua*, 74 NY2d 756, 757 [1989] [no rational basis for granting partial 4% variance rather than the 7% entreated one]; *Human Dev. Servs. of Port Chester v Zoning Bd. of Appeals of Vil. of Port Chester*, 67 NY2d 702, 705 [1986] ["none of the asserted reasons (for denying variance) is sufficient . . . in the face of (contradictory) admissions"]).

Further, because each and every element of Zoning Resolution § 72-21 must be satisfied, the BSA's determinations under section 72-21 (e) do not justify the unexplained bifurcation without factual support under Zoning Resolution § 72-21 (a). We thus remand for further proceedings before the BSA, including a consistent articulation of its findings under all of the required elements of Zoning Resolution § 72-21. Concur—Mazzarelli, J.P., Ellerin and Gonzalez, JJ.

Andrias and McGuire, JJ., concur in part and dissent in part in a memorandum by McGuire, J., as follows: Although I concur with the majority's conclusion that the order should be reversed, I would confirm the determination of appellant Board of Standards and Appeals of the City of New York (the BSA), and dismiss the petition.

Homes for the Homeless, Inc. (HFH), operates a transitional housing facility for homeless families in Queens known as "the Saratoga" (the facility). The facility is comprised of two former hotel buildings, which were abandoned by their prior owners

following the hotels' bankruptcies. The facility is located near Kennedy Airport, and is situated on a tract of land, comprised of three tax lots, that is zoned for manufacturing use.

After operating in contravention of the zoning law for several years, HFH applied to the BSA for two variances related to the property on which the facility is located. HFH sought a variance legalizing the nonconforming use (i.e., the facility) within the manufacturing zoning district, and a variance permitting expansion of the existing facility. With respect to the latter, HFH desired to construct a new building on the premises to house additional homeless families.

Following four public hearings and the submission of evidence, the BSA issued its determination on the application. The BSA, finding that HFH satisfied the four-pronged test set forth in the New York City Zoning Resolution for the granting of variances (NY City Zoning Resolution § 72-21),[1] granted the legalization variance. However, the BSA determined that HFH had not satisfied two of the elements necessary to grant the variance that would permit expansion of the facility. Specifically, the BSA found: (1) that HFH had not submitted substantial evidence that the unique physical conditions present at the site of the facility had led to unnecessary hardship or practical difficulties requiring an expansion of the use (see NY City Zoning Resolution § 72-21 [a]), and (2) that HFH failed to provide substantial evidence that the proposed expansion component of the application was the minimum variance necessary to afford HFH relief (see NY City Zoning Resolution § 72-21 [e]). Essentially, the BSA found that legalization of the nonconforming use represented the minimum variance necessary to afford HFH relief. HFH commenced this proceeding pursuant to CPLR article 78 to annul that portion of the determination of the BSA that denied the expansion component of its application. In the judgment adjudicating HFH's petition, the Supreme Court found that the determination of the BSA with respect to the expansion component was arbitrary and capricious, annulled that portion of the determination, and directed the BSA to grant the expansion component of the application. This appeal ensued.

1. To issue a variance, the BSA must find that: (1) because of "unique physical conditions" of property, conforming uses would impose "practical difficulties or unnecessary hardship"; (2) the proposed variances would "not alter the essential character of the neighborhood or district"; (3) the owner did not create the practical difficulties or unnecessary hardship; and (4) only the "minimum variance necessary to afford relief" is sought (NY City Zoning Resolution § 72-21). A fifth showing, that due to the unique physical conditions, conforming uses would not "enable the owner to realize a reasonable return" from the zoned property, is inapplicable where, as here, the applicant is a not-for-profit entity (NY City Zoning Resolution § 72-21 [b]).

A municipal zoning board has wide discretion in considering applications for variances, and the determination of such a board may not be set aside in the absence of illegality, arbitrariness or abuse of discretion (*see e.g. Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals,* 95 NY2d 437 [2000]; *see also Matter of Ifrah v Utschig,* 98 NY2d 304 [2002]). Thus, the decision of a zoning board regarding an application for a variance must be sustained if it has a rational basis and is supported by substantial evidence (*see e.g. Matter of Ifrah, supra; Matter of SoHo Alliance, supra*). In reviewing the determination of a zoning board, "courts consider 'substantial evidence' only to determine whether the record contains sufficient evidence to support the rationality of the Board's determination" (*Matter of Sasso v Osgood,* 86 NY2d 374, 385 n 2 [1995]).

In finding that the unique character of the property inhibited conforming uses and determining that some measure of relief was warranted, the BSA was not required to give HFH carte blanche concerning the scope of the relief. Rather, the BSA was charged with ensuring that only the minimum variance necessary to afford HFH relief was permitted (NY City Zoning Resolution § 72-21 [e]). The only solid evidence before the BSA regarding the extent of the relief required by HFH was the census of the facility's then-current occupants, evidence that rationally led the BSA to limit the relief it afforded HFH to legalization of the existing use. While HFH submitted with its application a request for proposed residences issued by the New York City Department of Homeless Services (DHS) and statistics regarding homeless persons in New York City, these documents painted nothing more than a general picture of the homeless situation in New York City. Additionally, by asserting that it would use the proposed new building to provide ancillary services to its residents if it did not receive new contracts from the DHS to provide additional residences, HFH tacitly conceded that a variance permitting expansion of the existing facility did not represent the minimum variance necessary to afford it relief. Therefore, the BSA rationally concluded that legalization of the nonconforming use represented the minimum variance necessary to afford HFH relief.

HFH contends that by granting the legalization variance the BSA was required to grant the expansion variance. This contention is premised upon HFH's belief that a determination to the contrary would be inconsistent, and therefore arbitrary. However, the Zoning Resolution required the BSA, among other things, to award the minimum variance necessary to afford HFH relief. As discussed above, the BSA rationally concluded

that legalization of the nonconforming use represented the minimum variance necessary to afford HFH relief. Moreover, acceptance of HFH's argument well could lead to unfortunate results in other cases. After all, when reviewing hybrid legalization-expansion variance applications in the future, the BSA would have a significant incentive to review the legalization components of such applications more exactingly, thus resulting in the denial of legalization variances that it otherwise may have been inclined to grant.

The crux of the majority's position is that the BSA acted "inconsistent[ly]" in granting the legalization but not the expansion variance. For reasons the majority does not explain, it apparently believes that the unoccupied status of lot no. 63, part of which was proposed to be used for the expansion, is central to the BSA's assertedly inconsistent and inexplicable determination. For some reason, the majority criticizes the BSA for having "made no distinction" between this lot and the "lots presently housing the Saratoga Inn." Similarly, the majority's cryptic references to "bifurcation" of the land by the BSA do not shed any light on the basis for the majority's position.

The majority also states that the "BSA's determination has also left HFH with a parcel of vacant property which it is *unable to utilize*" (emphasis added). If the majority means by this that HFH is unable to utilize the parcel in the manner sought pursuant to the variance application, the majority is merely restating the effect of the BSA's determination. Obviously, the same is true whenever a variance application is denied. Thus, on this reading of the majority's statement, it affords no basis for criticizing the BSA. Presumably, the majority does not mean to say that lot no. 63 can never be utilized by HFH in any way. After all, simply because the BSA did not approve the particular variance sought by HFH, it does not follow that the BSA never would approve a different variance application.

The majority's position regarding the disposition of this appeal—remand for further proceedings as opposed to confirming or denying the petition—cannot withstand analysis. A court reviewing the land use determination of a zoning board must confirm or annul the determination where the factual record is sufficient to permit the court to ascertain whether the determination was supported by substantial evidence; remand for further proceedings is generally not permissible (*see e.g. Matter of Arceri v Town of Islip Zoning Bd. of Appeals,* 16 AD3d 411, 413 [2005] ["the Supreme Court should have granted the petition and directed the Board to issue the requested (relief) to the petitioner, rather than remit the matter to the Board"]; *Matter*

*of Kreye v Bordino,* 302 AD2d 465, 465 [2003] ["since the Supreme Court properly found that the Zoning Board's determination was not supported by substantial evidence, the Supreme Court should have directed the Zoning Board to issue the area variances to the petitioner rather than remit that matter to the Zoning Board for an evidentiary hearing"]; *Matter of Bianco Homes II v Weiler,* 295 AD2d 506, 507 [2002] ["since the Supreme Court . . . properly found that the Board's determination was not supported by substantial evidence, the Board should have been directed to issue the area variance to the petitioner, rather than make a new determination"], *lv dismissed* 100 NY2d 526 [2003]).

Remand is permissible in a narrow class of circumstances, including: (1) where a zoning board fails to consider all of the factors applicable to an application required by law (*see e.g. Matter of Fleck v Town of Colden,* 16 AD3d 1052 [2005]; *Matter of Pazera v Drexelius,* 4 AD3d 804 [2004]), (2) where a zoning board considers inappropriate factors in reviewing an application (*see e.g. Matter of Stone Landing Corp. v Board of Appeals of Vil. of Amityville,* 5 AD3d 496 [2004]), (3) where a zoning board fails to articulate the reasons for its determination or fails to set forth its findings of fact (*see e.g. Matter of Gabrielle Realty Corp. v Bd. of Zoning Appeals of Vil. of Freeport,* 24 AD3d 550 [2005]; *Matter of Fike v Zoning Bd. of Appeals of Town of Webster,* 2 AD3d 1343 [2003]), or (4) where a zoning board fails to adhere to statutorily imposed procedural mandates (*see e.g. Matter of Barsic v Young,* 22 AD3d 488 [2005] [zoning board's determination annulled where board failed to file determination with town clerk within period prescribed by statute]).

Here, however, the BSA issued a detailed determination setting forth its factual findings with respect to the relevant considerations (*see* NY City Zoning Resolution § 72-21). Moreover, the BSA, over the course of 17 decretal paragraphs, articulated exactly why it limited the relief to legalization of the nonconforming use. While the majority may be dissatisfied with the BSA's conclusion regarding the expansion component of the application, it should not remand the matter for further proceedings. Rather, the record on this appeal permits this Court to review the rationality of the BSA's determination, and the majority should thus decide whether to confirm or annul that portion of the determination that is before us.

The specific terms of the remand make it all the more inappropriate. The majority remands the matter to the BSA for further proceedings, "including a consistent articulation of its find-

ings under all of the required elements of Zoning Resolution § 72-21." Because the majority does not explain how the BSA's denial of the expansion variance is inconsistent with the grant of the legalization variance, it is unclear what is meant by this mandate and how the BSA is to comply.

Regarding the function of the judiciary in the review of land use determinations by zoning boards, the Court of Appeals has emphasized that "a reviewing court should refrain from substituting its own for the reasoned judgment of the zoning board. 'It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them' " (*Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d 608, 613 [2004], quoting *Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]).

In my opinion, the BSA provided a reasoned explanation of its determination to grant the legalization variance and deny the expansion variance. Neither law nor logic required it to grant the latter after granting the former. Accordingly, I would reverse and confirm the BSA's determination.[2]

**2.** I do not understand the majority to have accepted HFH's argument that the BSA bowed to community pressure by denying the expansion component of its application. Certainly, the majority does not state that it accepts that contention. In any event, it is without merit. While multiple objections to HFH's application were voiced during the four public hearings related thereto, the BSA expressly stated that it did not rely on such testimony in arriving at its determination. Due respect for the competence and integrity of another governmental body surely requires that we not lightly conclude that it nonetheless improperly succumbed to community pressure. The only fair conclusion from this record is that the BSA carefully considered the evidence before it and applied the relevant considerations prescribed by the New York City Zoning Resolution (*see e.g. Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d 608 [2004]; *Matter of Ifrah, supra*; *cf. Matter of Pleasant Val. Home Constr. v Van Wagner*, 41 NY2d 1028, 1029 [1977] ["On the entire record in this case . . . it is evident, despite the reasons assigned by the Board of Appeals, that petitioner's application (for a special use permit) was denied not because of any objection peculiar to the proposed development, but because of community pressure directed against allowing any additional mobile home development in the area zoned for mobile homes"]).