■ In the Matter of NEIGHBORHOOD IN THE NINETIES, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents. [919 NYS2d 159]—

Substantial evidence supported each of the five findings made by the BSA required under New York City Zoning Resolution § 72-21 for issuance of the proposed variances (*see Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals*, 95 NY2d 437, 440, 442 [2000]).

Petitioners' contention that the Building qualifies as a "city facility," and is therefore subject to "Fair Share" review under the New York City Charter, is unpersuasive. The Fair Share Criteria by their terms apply only where there has been an expansion or reduction in the size of a city facility (*see* 62 RCNY Appx A, art 3 [a]). Here, the net result of the proposed variances will be a modest reduction in the number of units in the Building from 149 to 141. This small change in the number of units is not so significant as to constitute a change in facility size for purposes of the Fair Share Criteria (*see West 97th-W. 98th Sts. Block Assn. v Volunteers of Am. of Greater N.Y.*, 190 AD2d 303, 308 [1993]).

Petitioners' argument that the variance violates Multiple Dwelling Law § 211 (1), which provides that "no non-fireproof tenement shall be increased in height so that it shall exceed five stories," is unavailing. Petitioners' argument ignores the remainder of that same sentence in Multiple Dwelling Law § 211 (1), which states that "any tenement may [nonetheless] be increased to any height permitted for multiple dwellings erected after [April 18, 1929], if such tenement conforms to the provisions of this chapter governing such multiple dwellings erected after such date." In that regard, the 2008 resolution notes the developer's representation that the 80% demolition variance is necessary at least in part to meet building code fireproofing requirements, by, among other things, replacing the existing wood joist structural system and plumbing and sprinkler systems.

Under the City Charter, the Building Department, not the BSA, is empowered to approve or disapprove building plans, and to ensure in the first instance that they are in compliance with governing law and regulations (*see* NY City Charter §§ 643, 666 [6]; § 668; *Lesron Junior v Feinberg*, 13 AD2d 90, 93 [1961]). Thus, the Building Department is the appropriate forum, in the first instance, for resolution of concerns relating to building

code compliance. In any event, the developer represented that the completed Building would comply with all applicable building codes, and the BSA in its discretion was entitled to credit this representation in granting the variances. Concur— Gonzalez, P.J., Catterson, Richter and Abdus-Salaam, JJ.