■ NIZAM PETER KETTANEH et al., Appellants, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Respondents. LANDMARK WEST! INC. et al., Appellants, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Respondents, et al., Respondent. [925 NYS2d 494]—

Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered July 24, 2009, denying and dismissing the petition by Kettaneh and Lepow (the Kettaneh petitioners) to annul the determination of respondent Board of Standards and Appeals of the City of New York (BSA), dated August 26, 2008, and confirming the determination, unanimously affirmed, without costs. Order and judgment (one paper), same court and Justice, entered October 6, 2009, denying and dismissing the petition by Landmark West! Inc., 91 Central Park West Corporation and Thomas Hansen (the Landmark petitioners) to annul the aforesaid determination, and confirming the determination, unanimously affirmed, without costs.

In these CPLR article 78 proceedings, consolidated on appeal, petitioners challenge a zoning variance granted by BSA to respondent Congregation Shearith Israel (the Congregation), a not-for-profit religious institution. The subject zoning lot is located on Manhattan's Upper West Side and is currently occupied by the Congregation's landmarked synagogue, a connected parsonage house and a community house. The Congregation plans to demolish the community house and replace it with a nine-story community facility/residential building. The bottom four floors of the new building would be utilized for community purposes including a lobby/reception space for the synagogue, a toddler program, adult education and Hebrew school classes, a caretaker's unit and a Jewish day school; the

upper five stories would be occupied by residential market-rate condominium units.

Because the proposed building does not comply with zoning requirements, the Congregation sought a variance from BSA. The Congregation asserted that it needed a new facility so it could better accommodate religious and educational programs for its growing membership. BSA held a series of public hearings at which both proponents and opponents of the variance application testified and made written submissions. In a resolution adopted August 26, 2008, BSA concluded that the Congregation had shown its entitlement to the requested variance. BSA expressly acknowledged and considered the arguments raised here by petitioners and found them unavailing. Petitioners then brought the instant proceedings challenging BSA's resolution. In decisions rendered July 24, 2009 and October 6, 2009, Supreme Court confirmed BSA's determination, finding that it was rationally based. We now affirm.

It is well settled that municipal zoning boards have wide discretion in considering applications for variances, and judicial review is limited to determining whether the board's action was illegal, arbitrary or an abuse of discretion (*Matter of Ifrah v Utschig*, 98 NY2d 304, 308 [2002]; *Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals*, 95 NY2d 437 [2000]). Thus, a determination by a zoning board should be upheld if it has a rational basis and is supported by substantial evidence (*Matter of Ifrah* at 308). In reviewing such determinations, "courts consider 'substantial evidence' only to determine whether the record contains sufficient evidence to support the rationality of the Board's determination" (*Matter of Sasso v Osgood*, 86 NY2d 374, 384 n 2 [1995]).

"In order to issue the variances here, the BSA was required [under section 72-21 of the New York City Zoning Resolution] to find that the proposed development met five specific requirements: that (a) because of 'unique physical conditions' of the property, conforming uses would impose 'practical difficulties or unnecessary hardship;' (b) also due to the unique physical conditions, conforming uses would not 'enable the owner to realize a reasonable return' from the zoned property; (c) the proposed variances would 'not alter the essential character of the neighborhood or district;' (d) the owner did not create the practical difficulties or unnecessary hardship; and (e) only the 'minimum variance necessary to afford relief' is sought" (*Matter of SoHo Alliance*, 95 NY2d at 440; *see* NY City Zoning Resolution § 72-21). "[I]n questions relating to its expertise, the BSA's interpretation of the [Zoning Resolution's] terms must be

given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute" (*Matter of Toys "R" Us v Silva*, 89 NY2d 411, 418-419 [1996] [citations and internal quotation marks omitted]).

We conclude that BSA's finding that the proposed building satisfies each of the five criteria for a variance set forth in section 72-21 has a rational basis and is supported by substantial evidence (*see Matter of SoHo Alliance*, 95 NY2d at 440). BSA rationally found that there are "unique physical conditions" peculiar to and inherent in the zoning lot such that strict compliance with the zoning requirements would impose "practical difficulties or unnecessary hardship" (NY City Zoning Resolution § 72-21 [a]). Among the physical conditions BSA considered unique was that the zoning lot in question straddles two zoning districts: part of the lot is in the R10A zoning district and the remainder is in zoning district R8B, which has much stricter zoning requirements. BSA rationally concluded that the location of the zoning district boundary in the middle of the development site constrained an as-of-right development by imposing different height and setback limitations on the two portions of the single zoning lot.

The location of the zoning district boundary, along with other factors, including the Congregation's need to preserve the existing synagogue, provides a rational basis for BSA's finding of unique physical conditions (*see Matter of Elliott v Galvin*, 33 NY2d 594, 596 [1973]). Although four nearby lots are also intersected by a zoning district boundary, it cannot be said that this condition is "common to the whole neighborhood" (*Matter of Vomero v City of New York*, 13 NY3d 840, 841 [2009] [citations and internal quotation marks omitted]; *see also Matter of Douglaston Civic Assn. v Klein*, 51 NY2d 963, 965 [1980] ["Uniqueness does not require that only the parcel of land in question and none other be affected by the condition which creates the hardship"]). There is no merit to the contention that the requirement of unique physical conditions refers only to land and not buildings (*Matter of UOB Realty [USA] v Chin*, 291 AD2d 248 [2002], *lv denied* 98 NY2d 607 [2002]).

Section 72-21 (b) of the NY City Zoning Resolution requires a finding that due to the unique physical conditions, conforming uses would not "enable the owner to realize a reasonable return" from the zoned property. This finding, however, is not required for the granting of a variance to a nonprofit organization (NY City Zoning Resolution § 72-21 [b]). Nevertheless, BSA determined that because the planned condominiums were unre-

lated to the Congregation's mission, the Congregation was required to establish its inability to obtain a reasonable return from the residential portion of the proposed building. BSA then found, based on expert submissions and its own analysis, that the Congregation made the requisite showing.

On appeal, the Congregation contends that as a nonprofit entity, it is exempt from the section 72-21 (b) showing despite the fact that residential condominiums are a major part of its planned development. We need not reach this issue because BSA rationally concluded that due to the unique physical conditions, the Congregation could not realize a reasonable return from an as-of-right building. In making that finding, BSA reasonably relied upon "expert testimony submitted by the owners based upon significant documentation, including detailed economic analysis" (*Matter of SoHo Alliance*, 95 NY2d at 441). There was substantial evidence to support the remaining section 72-21 findings.

There is no merit to the Landmark petitioners' contention that BSA lacked jurisdiction to grant the variance here. Section 666 (6) (a) of the New York City Charter gives BSA the power to hear and decide appeals from determinations made by the commissioner of buildings, or, if properly designated, a deputy commissioner or a borough superintendent of buildings. Here, the Landmark petitioners contend that the objections issued by the Department of Buildings after review of the plans were not signed by any of these officials. However, any such failure is of no consequence because section 666 (5) of the NY City Charter provides an independent basis for BSA's jurisdiction. Under that subdivision, BSA has the power to "determine and vary the application of the zoning resolution as may be provided in such resolution and pursuant to section [668 of the NY City Charter]" (*see Matter of Highpoint Enters. v Board of Estimate of City of N.Y.*, 67 AD2d 914, 916 [1979], *affd* 47 NY2d 935 [1979]; *William Israel's Farm Coop. v Board of Stds. & Appeals of City of N.Y.*, 22 Misc 3d 1105[A], 2004 NY Slip Op 51953[U] [2004], *appeal dismissed* 25 AD3d 517 [2006]). Since section 668 does not require a final determination executed by one of the designated officials, BSA properly entertained the instant variance application.

We have considered petitioners' remaining arguments and find them without merit. Concur—Mazzarelli, J.P., Renwick, DeGrasse, Freedman and Richter, JJ. **[Prior Case History: 2009 NY Slip Op 31548(U).]**