■ In the Matter of Town of Marilla et al., Appellants, v Stanley E. Travis et al., Respondents. [56 NYS3d 695]—

Appeal from a judgment (denominated judgment and order) of the Supreme Court, Erie County (John L. Michalski, A.J.), entered October 13, 2015 in a proceeding pursuant to CPLR article 78. The judgment, among other things, consolidated two separate proceedings and dismissed the consolidated proceeding.

It is hereby ordered that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: Respondent Sustainable BioPower, LLC, and its predecessor in interest, Quasar Energy Group, LLC (collectively, BioPower), applied to respondent New York State Department of Environmental Conservation (DEC) for a solid waste facility management permit (Permit), which would allow it to store the end product of wastewater and other waste treatment processes that BioPower conducted in two existing anaerobic digestion facilities. That end product, trade named equate, would eventually be used as an agricultural fertilizer. BioPower sought permission to store the equate in an existing million-gallon manure storage tank on a farm, until it could be transported and used as fertilizer. After petitioner Town of Marilla declined to seek lead agency designation for purposes of the State Environmental Quality Review Act ([SEQRA] ECL art 8), the DEC designated itself as lead agency. After reviewing the application and seeking further information and increased detail regarding the proposal, the DEC issued a negative declaration of environmental significance. Next, after seeking more information from BioPower, seeking public comment, and considering the comments received, the DEC granted the Permit. Petitioners commenced separate CPLR article 78 proceedings, each seeking to annul the negative declaration and the determination to grant the Permit. Petitioners now appeal from a judgment that, inter alia, consolidated the proceedings and dismissed the consolidated proceeding. We affirm.

Petitioners contend that the DEC erred in granting the Permit based on its improper interpretation of the procedures set forth in its applicable regulations. "Our review of an agency determination that was not made after a quasi-judicial hearing is limited to consideration of whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (*Matter of Harpur v Cassano*, 129 AD3d 964, 965 [2015], *lv denied* 26 NY3d 916 [2016]; *see* CPLR 7803 [3]). Here, petitioners contend that the DEC's determination to issue the Permit was "made in violation of lawful procedure" (*Harpur*,

129 AD3d at 965), because the DEC's regulations mandate that any application for a permit be accompanied by a report signed, stamped and certified by an engineer, containing certain specific information, including wind maps, topographical maps showing streams and elevations, and other detailed environmental data (*see* 6 NYCRR part 360), and the application for the Permit did not include some of those items. We reject that contention.

"[I]t is well settled that an agency's failure to follow procedural provisions that are merely directory rather than mandatory in nature will not warrant annulling a subsequent determination unless the challengers show that substantial prejudice resulted from the agency's noncompliance" (*Matter of Dudley Rd. Assn. v Adirondack Park Agency*, 214 AD2d 274, 279 [1995], *lv dismissed in part and denied in part* 87 NY2d 952 [1996]; *see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d 531, 535-536 [1992]). Here, the record regarding the DEC's determination of the application for the Permit establishes that the DEC obtained and reviewed all of the information that petitioners contend should be included in the engineering report, and that BioPower's engineers certified, signed and stamped all of the information presented in support of the application. In addition, the DEC established that it already possessed much of the information that petitioners claim was omitted from the application, including wind and topographical maps. Furthermore, the evidence in the record establishes that the process took more than a year, during which the DEC made several requests for additional information, documentation, or engineering certification from BioPower, and that all the requested information was provided. Thus, Supreme Court properly dismissed the petitions insofar as they sought to vacate the Permit because petitioners established no prejudice from the DEC's failure to insist that BioPower and its predecessor put all the information into a single report. In addition, the DEC's interpretation of its regulation is entitled to deference inasmuch as it "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *see Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation*, 14 NY3d 161, 176 [2010]).

Conversely, with respect to the procedural rules governing determinations pursuant to SEQRA, it is well settled that a lead agency must strictly comply with SEQRA's procedural

mandates, and failure to do so will result in annulment of the lead agency's determination of significance (*see Matter of King v Saratoga County Bd. of Supervisors*, 89 NY2d 341, 347 [1996]; *Matter of Pyramid Co. of Watertown v Planning Bd. of Town of Watertown*, 24 AD3d 1312, 1313 [2005], *lv dismissed* 7 NY3d 803 [2006]). Here, however, a review of the extensive record demonstrates that the DEC complied with the procedural requirements of SEQRA in determining that the issuance of the Permit would have no significant adverse environmental impacts and in issuing the negative declaration. At the DEC's request, BioPower prepared part one of a full environmental assessment form (EAF), which included a comprehensive report prepared by BioPower's engineers that identified and reviewed in detail the areas of environmental concern relevant to the storage of equate in the existing manure tank, including possible odor emissions, mitigation of the effects of accidental discharges, and traffic. Later, again pursuant to the DEC's request, BioPower prepared portions of parts two and three of the EAF. The DEC concluded that the EAF was properly completed, and we agree inasmuch as it "contain[s] enough information to describe the proposed action, its location, its purpose and its potential impacts on the environment" (6 NYCRR 617.2 [m]). We have considered petitioners' remaining contentions concerning the DEC's compliance with SEQRA's procedural mandates, and we conclude that they are without merit.

Where, as here, "an agency has followed the procedures required by SEQRA, a court's review of the substance of the agency's determination is limited" (*Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 318 [2006]). "It is well established that, 'in reviewing the substantive issues raised in a SEQRA proceeding, [a] court will not substitute its judgment for that of the agency if the agency reached its determination in some reasonable fashion' " (*Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292, 304 [2002], *lv denied* 99 NY2d 508 [2003]). Upon conducting such a review, contrary to petitioners' contention, we conclude that the DEC properly "identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]). Present—Whalen, P.J., Smith, Centra, Troutman and Scudder, JJ.